## REUSENS *v.* MEXICAN NATIONAL CONSTRUCTION CO.

### (*Circuit Court, S. D. New York.* December 13, 1884.)

ACTION FOR MONEY HAD AND RECEIVED—BREACH OF CONTRACT.

In May, 1883, the Mexican National Construction Company sought subscriptions to a loan of $2,000,000 to aid in constructing the Mexican National Railway, and plaintiff subscribed $20,000 upon the terms of a contract whereby the construction company agreed to deposit in trust securities of the nominal value of $20,000,000 as collateral for the repayment of the $2,000,000 loan on or before September 15, 1884. October 1, 1883, plaintiff paid the installments of his subscription as called by the company, and received receipts therefor, which, under the contract, were not transferable without consent of the company, but could be exchanged for formal certificates of interest in the loan, authenticated by the trustee. Before payment of the last installment, the company transferred to the trustee the securities by indenture, prescribing the powers and duties of the trustee, and providing that he should execute, as requested by the company, certificates of interest entitling the registered holders to an interest in the securities, or the proceeds of the sale thereof, bearing the same proportion to the whole as the amount of each certificate bore to the $2,000,-000; but that he should not sell the securities to satisfy the loan unless the holders of certificates representing 25 per cent. of the whole amount requested, and that the holders of a majority in interest might waive default in payment of the loan, or extend the time of payment, or suspend or postpone the sale of the collaterals, at their discretion. Plaintiff had no knowledge of the terms of this indenture, and demanded a certificate, as provided in the contract, and, on a refusal to deliver the same, brought suit for money had and received. *Held* (1) that the deposit of the collaterals, under the terms of the trust indenture, was a breach of the subscription contract; (2) that, inasmuch as the defendant had put it out of its power to perform an executory contract with the plaintiff, the latter had the right to treat the contract as terminated; (3) that the plaintiff could, at his election, sue upon the agreement and recover damages for a breach, or treat it as rescinded and recover back the money he had advanced.

At Law.

*Billings & Cardoza,* for Reusens.

*Theodore F. H. Meyer,* for defendant company.

WALLACE, J. The demurrer to the complaint raises the question whether the plaintiff can recover as for money had and received, upon the following facts: In May, 1883, the defendants sought subscriptions to a loan to be made to it of $2,000,000, to aid in constructing the railroad of the Mexican National Railway Company, and on May 30, 1883, the plaintiff became a subscriber to the extent of $25,000, upon the terms of a contract of subscription. By this contract the defendant agreed to deposit in trust with a trustee named certain securities, aggregating in nominal value $20,000,000, as collateral for the repayment of the $2,000,000 loan on or before

September 15, 1884. On October 1, 1883, the plaintiff had paid the amount subscribed by him in installments, as called by the defendant, and had received receipts therefor, which were not transferable without the consent of the defendant. It was provided by the contract of subscription that such receipts should be exchanged for formal certificates of interest in the loan authenticated by the trustee, upon payment of the last installment of the subscription. Before the payment of the last installment by the plaintiff the defendant transferred to the trustee named in the contract the securities specified therein, but this was done by a trust indenture which prescribed the powers and duties of the trustee respecting the use and sale of the securities. Among other things, this trust indenture provided that the trustee should execute from time to time, as requested by defendant, certificates of interest entitling the registered holders to an interest in the securities, or the proceeds thereof in case of a sale by him "under the provisions of the trust indenture," bearing the same proportion to the whole as the amount of each certificate should bear to $2,000,000. The indenture also provided that the trustee should not sell the securities to satisfy the loan unless holders of certificates representing 25 per cent. of the whole amount should request him to do so; and it also provided that the holders of a majority in interest might waive any default in the payment of the loan on the part of the defendant, or instruct the trustee to do so, and extend the defendant's time for payment, and suspend or postpone the sale by the trustee of the collaterals at their discretion. So far as appears, the plaintiff was ignorant of the terms of the indenture when he paid the installments of his subscription, but, after it was executed, demanded a certificate of defendant of the character specified in the contract of subscription. The defendant refused such a certificate, but offered one such as it had authorized the trustee to execute by the terms of the trust indenture.

The first question is whether the deposit made of the collaterals under the terms of the trust indenture was such a departure from the contract of subscription as to amount to a breach of that contract. The contract was silent as to the conditions upon which the bonds should be deposited with the trustee, aside from the stipulation that the loan should be secured by an assignment in trust of the specified collaterals which were to be deposited with the trustee. The reasonable implification, however, is that they were to be deposited to secure the repayment of the loan on the contract day, and that the trustee was to exercise the ordinary rights of a pledgee to sell the securities and satisfy the debt for the benefit of the subscribers. Such a pledge would, doubtless, confer upon every subscriber a qualified right to call upon the trustee to satisfy the amount due to him by a sale of the securities. But the fund created was a joint fund for the benefit and protection of the whole body of subscribers, and therefore is not to be dealt with upon the intervention of a single *cestui*

*que trust* to the disadvantage of the. others. If the trust indenture provided that the trustee should not sell the securities unless a sale should be advantageous to the common interests of the *cestuis que trust,* it would be unobjectionable, because it would only prescribe a condition which would be implied, and which a court of equity would impose in the exercise of its jurisdiction over trusts, if applied to by any of the parties in interest. But the indenture contains arbitrary restrictions upon the powers of the trustee, which he cannot disregard, and which materially impair the rights of the subscribers. It substitutes the discretion of 25 per cent. in interest of the *cestuis que trust* in place of the discretion of the trustee, and requires him, at the intervention of a majority of the subscribers, to extend the time of payment, and postpone a sale of the securities. The plaintiff did not consent to the creation of such a trust. The conditions may have been designed to promote the best interests of all the subscribers; they may have been wise and expedient, but they were not such as were authorized by the plaintiff's contract. A court of equity might reform the terms of the trust indenture if a suit were brought for that purpose, but, so long as they stand, would have to adhere to them, if called upon to intervene upon the application of the *cestuis que trust.*

It remains to consider whether the plaintiff can recover back his money in an action for money had and received, or whether his remedy is merely one for damages for a breach of contract. The subscription agreement was a separate and independent contract between the defendant and each subscriber. The defendant could maintain a suit against each subscriber upon his failure to pay the amount of the subscription; and it must follow that each subscriber has a corresponding right of action against the defendant for any breach of the contract on its part towards him. Similar contracts have been frequently adjudged to confer a several liability and a several right of action on the part of each subscriber. Thomp. Liab. Stockh. § 114; *Whittlesey* v. *Frantz,* 74 N. Y. 456. It is a familiar rule that when one party to an executory contract puts it out of his power to perform it, the other may regard it as terminated, and has an immediate right of action to recover whatever damages he has sustained. *Ford* v. *Tiley,* 6 Barn. & C. 325; *Bowdell* v. *Parsons,* 10 East, 359; *Heard* v. *Bowers,* 23 Pick. 455–460; *Shaw* v. *Republic Life Ins. Co.* 69 N. Y. 293; *U. S.* v. *Behan,* 110 U. S. 339; S. C. 4 Sup. Ct. Rep. 81; *Lovell* v. *St. Louis Mut. Life Ins. Co.* 111 U. S. 264; S. C. 4 Sup. Ct. Rep. 390. The plaintiff was under no obligation to tender his receipts. They were merely vouchers. They were to be exchanged for formal certificates, but when the defendant had put it beyond its power to deliver the proper certificates, the plaintiff was not bound to tender them. No demand of the certificates was necessary after defendant had incapacitated itself from giving them. Where money is advanced upon an executory contract, which the contracting party fails to perform,

it is in the election of the other party either to sue upon the agreement and recover damages for a breach, or to treat the contract as rescinded, and recover back his money as paid upon a consideration which has failed. *Hill* v. *Rewee*, 11 Metc. 271; *Brown* ·v. *Harris*, 2 Gray, 359; *Wheeler* v. *Board*, 12 Johns. 363; *Lyon* v. *Annable*, 4 Cow. 350; *Appleton* v. *Chase*, 19 Me. 74; *Shepherd* v. *Hampton*, 3 Wheat. 200; *Smethhurst* v. *Woolston*, 5 Watts & S. 106. If there had been a part performance of the contract by which the plaintiff received some benefit, and the defendant could not be restored to the previous situation, the plaintiff's only remedy would have been for a breach of the agreement, and his damages would be measured by his loss. *Hunt* v. *Silk*, 5 East, 449; *Foss* v. *Richardson*, 15 Gray, 306; *Nash* v. *Lull*, 102 Mass. 60. He has received nothing, however, under the contract, and the law implies a promise on the part of the defendant to pay back what it has received.

Judgment is ordered for plaintiff on the demurrer.