### FRANCIS v. BROWN ET AL.
### (No. 755.)

SPECIFIC PERFORMANCE—CONTRACT FOR SALE OF LAND—DEFAULT BY
BOTH PARTIES—REMEDY—DAMAGES—PAYMENT—TENDER.

1. In an action against a vendor for specific performance of a
   contract for the sale of land and damages for his breach
   of the contract to convey, where the trial court gave the
   purchasers judgment for damages without specific per-
   formance, the denial of specific performance, in the absence
   of objection and exception by the plaintiffs, affirmatively
   established the issue as to the right of such relief in the
   vendor's favor.

2. Where both parties to a contract for the sale of land are
   in default, a court of equity in an action for specific per-

formance or damages, will place the parties as nearly in *statu quo* as possible.

3. A contracting party who is without fault upon breach of the contract by the other party may elect to sue and recover damages for the breach or may recover back the money paid as upon a consideration which has failed.

4. The measure of damages for the refusal or failure to sell land pursuant to a contract for a stipulated price is the difference between the contract price and the value of the land at the time appointed for the completion of the sale, in the absence of an agreement to the contrary.

5. In an action against a vendor for specific performance and damages for the breach of a contract for sale of land, where the purchasers have neither alleged nor produced evidence to show the value of the land at the time when the conveyance should have been made, the right of the plaintiffs to recover is limited to the amount, if any, which they have paid under the contract, with interest.

6. Where one of two purchasers gave the vendor his check for his share of the payment due at the time of the execution of the contract for the sale of land, which was accepted without protest, the fact that the check came back into his hands without being cashed did not disprove the fact of such payment in an action against the vendor for breach of the contract, the evidence being conflicting as to whether the check was returned to the maker to be credited upon another obligation of the vendor, and the maker's interest in the contract having been transferred to other parties who were plaintiffs in the action; the question whether, as between the maker of the check and the vendor, the former, by taking back the check, received something to which he was not entitled, not being within the proper issues of the case.

7. In such action, the vendor having tendered to the·plaintiffs, before the suit was brought, the amount only which was paid by the other purchaser, and the trial court having found that the entire amount agreed to be paid at the time of the execution of the contract had been paid, the plaintiffs were under no legal obligation to accept such tender, since it was less than they were entitled to.

8. Where one of several purchasers under a contract for the sale of land upon tendering to the vendor at the time appointed for the conveyance of the land his share of the purchase money, which the vendor refused, left the amount so deposited in a bank, he was not entitled to interest thereon, in an action by all the purchasers against the

vendor for damages for a failure to convey, even if the
money was deposited subject to the vendor's acceptance,
where, upon the facts, the plaintiffs were only entitled to
recover the amount paid by them under the contract, for,
if it was necessary to keep the tender good, it did not ap-
pear that any other part of the price tendered was so held,
retained, or deposited to keep good the tender of the whole
amount of the purchase price.

[Decided January 26, 1915.]          (145 Pac. 750).

ERROR to the District Court, Laramie County; HON.
DAVID H. CRAIG, Judge.

The material facts are stated in the opinion.

*W. E. Mullen,* for plaintiff in error.

The suit being based on a written contract, in which the
terms of the agreement are stated in clear and unequivocal
language, the rights and obligations of the parties must be
measured thereby. Specific performance was denied for
the reason, as indicated in the findings, that there was a
right of homestead in some portion of the lands, without
evidence to show its exact location. Plaintiffs were award-
ed judgment upon the theory, apparently, that they had per-
formed their part of the contract entitling them to damages
in lieu of performance, and that defendant had failed to
perform his part of the contract. This constitutes the fun-
damental error in the case, for the evidence shows that
plaintiffs refused to pay the agreed purchase price. Hence
there was no right to specific performance irrespective of
the question of homestead. Cotton attempted to hold out
and deduct from his part of the first payment a commis-
sion on the sale of the land, and the result of the transaction
is that only part of the initial payment was made. There
was no agreement for a commission to be paid to Cotton
by Francis.

The petition does not allege the absence of an adequate
remedy at law, a necessary allegation in an action for spe-
cific performance, nor does it allege that plaintiffs had paid
or offered to pay interest on the mortgage which they had

assumed and agreed to pay by the terms of the contract, an allegation also necessary to support an action for specific performance or damages.  In such an action the plaintiff must plead all facts which are required to warrant the relief.  (Senter v. Davis, 38 Cal. 450).  And necessary allegations omitted from the petition cannot be supplied by the reply.  (Durban v. Fisk, 16 O. St. 534; School Dist. v. Caldwell, 16 Neb. 68).  The allegations in the reply with reference to the homestead are contradictory and meaningless.  Since the contract was not enforceable in equity, it could not be used as a basis for the recovery of damages. A sale, disposal or incumbrance of homestead property by the husband without joining the wife is void.  (Const., Art. 19, Sec. 1, Homesteads; Comp. Stat. Sec. 3662), though it is held that a mortgage is enforceable as to property other than the homestead, where the homestead tract may be eliminated.  (Bank v. Bank, (Wyo.) 70 Pac. 726).  And likewise a lease.  (Jones v. Losekamp, 114 Pac. 673).  The decided weight of authority in this country is to the effect that under statutory provisions, like those in this State, an executory contract, including homestead lands, not signed by the wife, will not be enforced by specific performance. (Mundy v. Schellaberger, 161 Fed. 506; Sammon v. Wood, 107 Mich. 506, 65 N. W. 529).  And unless specific performance can be decreed of the whole of a contract, the court will not enforce any part of it.  (Ross v. R. R. Co., Fed. Cas., No. 12,080; Dorris v. Sullivan, 90 Cal. 279, 27 Pac. 216; Baldwin v. Fletcher, 48 Mich. 604, 12 N. W. 873; Young &c. Co. v. Brownlee, 34 Atl. 947; Barbour v. Hickey, 24 L. R. A. 763 and note; Pearsall v. Chapin, 44 Pa. 9.)  Equity will not enforce a contract specifically unless it be free from fraud and surprise.  (Brown v. Pitcairn, 24 Atl. 55; Friend v. Lamb, 152 Pa. St. 529, 25 Atl. 577; McShane v. Hazelhurst, 50 Md. 107; Ratliff v. Vandikes, 89 Va. 307, 15 S. E. 864; 36 Cyc. 605).  A broker is not entitled to a commission on a sale to himself, in the absence of a special agreement therefor.  (Hammond v. Brookwalter, 12 Ind. App. 177, 39 N. E. 872; Powers v.

Black, 159 Pa. St. 153, 28 Atl. 133; Grant v. Hardy, 33 Wis. 668; Finnerty v. Fitz, 5 Colo. 174; Jansen v. Wiliams, 36 Neb. 869; Ryan v. Kahler, 46 S. W. 71; Foss Inv. Co. v. Ater, 95 Pac. 1017; Butler v. Agnew, 99 Pac. 395; Mitchell v. Gifford Co., 67 S. E. 197; Stuart v. Mather, 32 Wis. 344; Tillney v. Wolverton, 46 Minn. 256; Hughes v. Washington, 72 Ill. 84; Tyler v. Sanborn, (Ill.) 4 L. R. A. 218; McNutt v. Dix, (Mich.) 10 L. R. A. 660; Pomeroy's Eq. Juris., Sec. 959; Porter v. Woodruff, 36 N. J. Eq. 179; Mechem on Agency, Sec. 455; 45 L. R. A. 33 and note; 154 Pa. 326; 59 Ill. App. 161). An agent authorized to sell at a certain price cannot sell to himself. (Anderson v. Bank, 5 S. D. 83, 64 N. W. 114). Nor can one be principal on one side and broker on the other. (Hogle v. Meyering, 161 Mich. 485, 126 N. W. 1063; Fillmore v. R. R. Co., 2 Wyo. 94).

The court very properly permitted evidence to explain the circumstances of the alleged first payment, although the receipt of the payment is acknowledged in the contract. (Soule v. Soule, 157 Mass. 451, 32 N. E. 663; Woolen v. Hillen, 9 Gill, (Md.) 185, 52 Am. Dec. 690; 17 Cyc. 633; Mulligan v. Smith, 57 Pac. 733; 1 Greenleaf's Ev. 305; Crow v. Colberth, 24 N. W. 479; Taggart v. Stanberry, Fed. Cas. No. 13,724, 2 McLain, 543; Halwell v. Fitts, 20 Ga. 723; Harter v. Greenleaf, 65 Me. 405; Elysville Mfg. Co. v. O'Kisko Co., 1 Md. Ch. 392; Parker v. Foy, 43 Miss. 260, 55 Am. Dec. 484; Bolles v. Beach, 22 N. J. L. 680, 53 Am. Dec. 263; Hewet v. Schofield, 9 N. J. Eq. 492; Smith v. Arthur, 110 N. C. 400, 15 S. E. 197; Thayer v. Viles, 23 Vt. 494; Long v. Freeman, 114 N. C. 567; Lazell v. Lazell, 12 Vt. 443, 36 Am. Dec. 352; 17 Cyc. 629 and note). A check is not an assignment of funds unless accepted or certified. (Comp. Stat., Sec. 3347). Nor is it payment unless taken under an express agreement that it is so accepted. And this rule applies to contemporaneous as well as pre-existing debts. (30 Cyc. 1207-1209; Thompson v. Bank, 82 N. Y. 1; Barnett v. Smith, 30 N. H. 256, 64 Am. Dec. 290; Kerymen v. Newby, 14 Kan.

164; Selby v. McCullough, 26 Mo. App. 66; People v. Baker, 20 Wend. 602; Hatcher v. Comer, 75 Ga. 728; De Paris v. Driesbach, 20 Pac. 28; 132 Pac. 16; 35 L. R. A. (N. S.) 26). Where the check is returned to the debtor and maker and used by him, the debt remains unpaid. (Good v. Singleton, 39 Minn. 340). Unless a check is paid it is not payment of the debt. It is simply an order for payment until it is honored and paid. (Born v. Bank, 7 L. R. A. 442; Bank v. R. R. Co., 9 L. R. A. 263; Dille v. White, 10 L. R. A. (N. S.) 521; Cox v. Hays, 18 Ind. App. 223, 47 N. E. 844; Ins. Co. v. Globe, 51 Neb. 8, 70 N. W. 503; Bank v. McConnell, 14 L. R. A. (N. S.) 616; Tiedeman on Com. Pap., Sec. 456).

There is no proper ground under the evidence for awarding judgment for the amount of the Cotton check, or the interest thereon, for the defendant, Francis, never received it. To be effective as such, a tender must be sufficient in amount to cover the sum due. (Sav. Ass'n. v. Bank, 12 Wyo. 315, 75 Pac. 448). The allowance of interest to Delahoyde was error. If he left his money at the bank it was not by direction of the defendant Francis. The court did not find that the balance of the money was left there by Cotton or Brown upon any theory of a "standing tender". The deal was not closed, because there was no proper tender made of the whole amount. However, the money left at the bank by Delahoyde was in the form of a check, and it does not appear that it was certified. If he left it at the bank there was nothing to show that it was good.

Findings of fact unsupported by evidence or a judgment unsupported by findings of fact constitute proper ground for new trial. (Rubel v. Willey, 5 Wyo. 427; Bank v. Anderson, 7 Wyo. 441). The defendant was entitled to special findings of fact on the issue whether the plaintiffs had paid or offered to pay the accrued interest on the mortgage, which had been assumed by them under the terms of the contract. That was a material question under the pleadings. The plaintiffs were joint purchasers under the contract and jointly responsible for the performance of its

obligations. (Smith v. Krall, (Ida.) 75 Pac. 263; Pomeroy's Eq. Juris. (3rd Ed.) Sec. 1407). The facts in the case do not warrant either specific performance or damages. (Pomeroy's Eq. Juris. (3rd Ed.) Sec. 1405).

*H. Donzelmann*, for defendants in error.

It is not contended on behalf of defendants in error that a homestead can be sold or alienated by a husband without the wife's signature, but it is contended that where a husband contracts to sell a large tract of land in excess of the number of acres allowed as a homestead, the contract is good as to all of the land outside the homestead tract. The word "tender", when used in connection with mutual and concurrent promises, means only a readiness and willingness, accompanied with the ability, on the part of one of the parties, to do the acts required to be performed by him, provided that the other will concurrently do the acts which he is required to do, and a notice by the former to the latter of such readiness. (Smith v. Lewis, 26 Conn. 110; Raudabaugh v. Hart, 61 O. St. 73, 55 N. E. 214; Aborn v. Mason, 1 Fed. Cas. 37; Adams v. Clark, 63 Mass. 215; Cook v. Doggett, 84 Mass. 439; Guilford v. Mason, 48 Atl. 386; Manistee Lumber Co. v. Bank, 143 Ill. 490; Shouse v. Doane, 39 Fla. 95, 21 So. 807; 8 Words & Phrases, p. 6911; Clark v. Weis, 87 Ill. 438).

Under the practice of this State, when the court has obtained jurisdiction of a case for one purpose, it may and should retain it generally for any proper relief. (Swift v. Dewey, 20 Neb. 107). When a vendor disables himself from making conveyance damages may be decreed. As to the rule of damages, see: Dustin v. Newcomer, 8 Ohio, 49; Gibbs v. Champion, 3 Ohio, 337. In a suit for specific performance of a contract for the sale of land the vendee is entitled to rents and profits for the time that he has been kept out of possession by the vendor. (Lombard v. Chicago Sinai, 75 Ill. 271; 2 Suth. on Damages, 234-237). The petition contains sufficient allegations to justify specific performance. (Jenkins v. Harrison, 66 Ala. 345). An

executory contract for the sale of lands, which includes the vendor's homestead, and which is not signed or acknowledged by the wife, is not wholly void, but is obligatory except as to the homestead tract. (Booker v. Anderson, 35 Ill. 68; Johnson v. Higgins, 108 N. W. 169; Wright v. Young, 6 Wis. 125; White v. Bates, 234 Ill. 276; Donner v. Redenbaugh, 61 Ia. 269; Neiman v. Schuster, 43 S. W. 1075; Seift v. Dewey, 20 Neb. 107; Despain v. Wagner, 163 Ill. 598; Thorp v. Thorp, 70 Vt. 46; Watson v. Doyle, 130 Ill. 416; Smith v. Miller, 31 Ill. 158; Boyd v. Cudderback, 31 Ill. 113; Beecher v. Baldy, 7 Mich. 488; Dye v. Mann, 10 Mich. 291). Of course, if the homestead tract cannot be severed from the entire tract the contract or deed will be void as to the entire contract. (Sammon v. Wood, 65 N. W. 529; Engle v. White, 62 N. W. 154; Jones v. Losekamp, 19 Wyo. 83).

The contract in this case was valid except as to 160 acres, and the court should have appointed a commission to select a homestead and directed the defendant to make a deed for the remainder of the lands specified in the contract upon the payment by the plaintiffs of the balance of the purchase price.

SCOTT, JUSTICE.

The plaintiff in error, who was defendant below, and will, for convenience, be hereafter referred to as defendant, brings error to reverse a judgment for damages in the sum of $6,043.04 and costs obtained against him by defendants in error, who were plaintiffs, and who will be here referred to as plaintiffs, for an alleged breach of a written contract to sell and convey to them certain described lands of which defendant was the owner and occupant. The action was for specific performance of the contract and damages, and was tried to the court which made and separately stated its findings of fact and conclusions of law. A motion for a new trial was made upon several grounds which was overruled and such ruling is here assigned as error. The agree-

ment *in haec verba* omitting signatures and caption is as follows:

"This agreement, made this first day of July, A. D. 1907, by and between Edward Francis, of Cheyenne, Laramie County, Wyoming, party of the first part, and John Brown and Charles E. Cotton of Cheyenne, Laramie County, Wyoming, party of the second part,

Witnesseth: The said Edward Francis hereby promises, covenants and agrees to and with the said John Brown and Charles E. Cotton that on the first day of May, A. D. 1908, he will convey to them by good and sufficient warranty deed, accompanied by abstract of title, all of the following described tracts and parcels of land, lying and being situate in the County of Laramie, in the State of Wyoming, and particularly described as follows, to-wit: All of Section seven (7), the S.W. ¼ of the N.W. ¼, the N.W. ¼ of S. W. ¼ and the S. ½ of S. ½, Section eighteen (18), the N.W. ¼ and W. ½ of the N.E. ¼, Section twenty (20), all Section twenty-nine (29) except right-of-way of county road, in Township fourteen (14) north, of Range sixty-eight (68) west and all Section one (1), the S.E. ¼ and W. ½ of N.E. ¼, Section two (2), all Section three (3), all Section ten (10) except the S.W. ¼ of the S.W. ¼, all Section eleven (11), the W. ½ of N.W. ¼, S.E. ¼ of N. W. ¼, S.W. ¼, W. ½ of S.E. ½ and the S.E. ¼ of S.E. ¼, Section twelve (12) in Township fourteen (14) north, of Range sixty-nine (69) west of the Sixth Principal Meridian and containing four thousand, nine hundred, six and no/100 (4,906.00) acres, more or less, according to the government survey of said land (excepting the right-of-way of the Cheyenne and Northern Railway), together with all the appurtenances and all the water rights thereunto belonging. In consideration of the foregoing, the said John Brown and Charles E. Cotton covenant, promise and agree to and with said Edward Francis as the purchase price for said land the sum of nineteen thousand, six hundred, twenty-four and no/100 dollars ($19,624.00) in manner as follows, to-wit: Three thousand, six hundred, twenty-four

and no/100 dollars ($3,624.00) in hand paid July 1st, 1907, receipt of which is hereby acknowledged; nine thousand, five hundred and no/100 dollars ($9,500.00) cash May first, 1908, and assume a mortgage of six thousand, five hundred and no/100 dollars ($6,500.00) with interest from May first, 1908, said mortgage being now on record and is a lien on the said lands.

It is mutually agreed by and between the parties hereto that the said warranty deed shall be delivered to said John Brown and Charles E. Cotton and $9,500.00, the balance of said purchase money, shall be delivered to said Edward Francis at the Stock Growers' National Bank at Cheyenne, Wyoming, on said first day of May, A. D. 1908, and this agreement fully performed at said time and place.

It is fully agreed that in the event that said John Brown and Charles E. Cotton shall fail or refuse to carry out and perform their agreements, before set forth, after said Edward Francis shall have signed this contract, they shall and will forfeit all payments made on this agreement.

Said parties respectively bind their heirs, assigns and legal representatives to the faithful performance of the terms of this agreement.

In Witness Whereof, The said parties have hereunto set their hands the day and year first above written."

It is further alleged and admitted that on August 5, 1907, Charles E. Cotton, one of the parties to the contract, E. D. Cotton and Edwin Delahoyde, two of the plaintiffs, entered into a contract in writing, by the terms of which, Charles E. Cotton, for value, assigned them all his interest in and to said contract and the lands described therein. It is admitted by the pleadings that the date of making the final payment was extended by two separate written agreements to May 1, 1910. It is further alleged in the petition that plaintiffs performed all the conditions of the contract to be by them performed, and that they have always stood ready, able and willing to do so and that defendant has wholly failed and refused to execute a conveyance of the land as by his contract he was bound to do and that $3,624 was paid to

Francis on July 1, 1908, as recited in the contract. It is further alleged, for a second and further cause of action, that since May 1, 1910, defendant has taken, received and enjoyed all the rents and profits of the land continuously, which were reasonably worth the sum of $4,800, to their damage in that sum, for which judgment is prayed, together with the further sum of $500 attorney's fees and costs, and for a specific performance of the contract.

The defendant for answer and cross-petition admitted the ownership of the land and the execution of the contracts of July 1, 1907, August 5, 1908, and of May 1, 1909, extending the time to make final payment to May 1, 1910; that he paid the mortgage indebtedness thereon of $6,500 and accrued interest as alleged in the petition and denied each and every other allegation set forth in the first cause of action pleaded in the petition; he further admits that he received and used the profits and income of said lands from May 1, 1910, to the commencement of this action as alleged in plaintiffs' second cause of action.

For a further answer to plaintiffs' first cause of action defendant alleged that said John Brown and C. E. Cotton violated the conditions of the contract of purchase of the land and refused to comply with its conditions in this that after defendant had signed said contract and said contract had been deposited in escrow in the Stock Growers' National Bank at Cheyenne, Wyoming, plaintiffs failed and refused to make payment of the sum of $3,624, as stipulated, acknowledged and receipted thereon, but paid only $1,812, and after granting the extension of time within which to make full payment under the terms of the contract, they, on May 3, 1910, and not on April 30, 1910, offered to pay an additional sum of $14,188, and demanded that defendant accept the same in full settlement of the balance of the purchase price or the sum of $16,000, which would be $3,624 less than the purchase price stipulated, which was $19,624, and that defendant refused to accept the same, no other or greater sum having been tendered. That notwithstanding Cotton and Brown in and by their contract agreed

to and did assume to pay as a part of said purchase price the mortgage lien of $6,500, with interest thereon from May 1, 1908, they wholly failed to do so, but credited defendant with the principal sum of said lien, but failed and refused to pay the accrued interest of $910, nor was said interest ever tendered him. That defendant on May 31, 1910, tendered a return or repayment of $1,812, and accrued interest to C. E. Cotton and Brown, amounting to $2,254, which was refused. For a further defense, it is alleged that at the time of the execution of the contract of July 1, 1907, he was a married man residing with his wife and family on and occupying the land as a homestead and continued to do so up to the present time, which fact was well known to Brown and Cotton and that his wife did not join in said contract, and that she has not assented thereto nor is she a party to this suit.

Defendant for a further answer and cross-petition alleges that plaintiffs procured the contract and two extensions of the time within which to complete said contract to be recorded in the office of the County Clerk of Laramie County, Wyoming, that being the county in which the land is situated, in furtherance of their attempt to purchase said land at a price less than agreed upon, thereby creating a cloud on said title, the removal of which is prayed.

Plaintiffs filed their reply, in which they deny the new matter alleged in the answer, except as otherwise admitted; admit that they agreed to assume the payment of the mortgage of $6,500, and allege that they are yet ready and willing to pay the same upon defendant carrying out the provisions and performing the conditions of the contract to be by him performed; deny that defendant was occupying the land as a homestead and, if so, they would concede to him the right of selection which he has failed to do and that they would accept the balance of the land or that remaining outside of the homestead selection of 160 acres.

The court upon request made and numbered its separate findings of fact and conclusions of law, and while some of the admissions in the pleadings are included in the findings

of fact and, though quite lengthy, we deem it best to set them all out here to show the theory on which the case was tried and decided. They are as follows:

"1.   That plaintiffs and defendant entered into contract pleaded by plaintiffs in their petition, on the 1st day of July, A. D. 1907.   2.   The court doth find, that by said contract, the said defendant agreed to convey to John Brown and Charles E. Cotton, by good and sufficient warranty deed, accompanied by abstract of title, all the described tracts and parcels of land described in plaintiffs' petition filed herein, upon the payment to the said defendant of the sum of nineteen thousand, six hundred and twenty-four dollars ($19,624.00), same being the purchase price stipulated to be paid in said contract, to which finding defendant at the time duly excepted.   3.   The court doth further find that John Brown and Charles E. Cotton did agree, under said contract with the said Edward Francis, defendant, to pay said purchase price in manner following, to-wit: the sum of three thousand, six hundred and twenty-four dollars ($3,624.00) on the 1st day of July, A. D. 1907, and that said date was the date upon which the said contract was entered into, and to pay the balance of the purchase price, to-wit: sixteen thousand dollars ($16,000), on the 1st day of May, A. D. 1910, to which finding defendant at the time duly excepted.   4.   The court doth further find that the said John Brown and Charles E. Cotton did pay to Edward Francis, the defendant, the said sum of three thousand, six hundred and twenty-four dollars ($3,624.00) on said 1st day of July, A. D. 1907, and that said sum of three thousand, six hundred and twenty-four dollars ($3,624.00) has been in the possession of the said Edward Francis, defendant, ever since said 1st day of July, A. D. 1907, to which finding defendant at the time duly excepted.   5.   The court doth further find that the said Charles E. Cotton, on the 5th day of August, A. D. 1907, made an assignment of his interest in the said contract to Edwin Delahoyde and E. D. Cotton, two of the above named plaintiffs.   6.   The court doth further find that the date stipulated in said contract on

which final payment was to be made thereunder to Edward Francis, the defendant, same being the 1st day of May, A. D. 1908, was, by mutual agreement, between the parties thereto, extended until the 1st day of May, A. D. 1910. 7. The court doth further find that said plaintiffs, John Brown, Edwin Delahoyde and E. D. Cotton, on the 30th day of April, A. D. 1910, and in the Stock Growers' National Bank of Cheyenne, same being the place designated in said contract in which the aforesaid final payment was to be made to the said defendant, Edward Francis, did tender to the said Edward Francis, defendant, the sum of sixteen thousand dollars ($16,000.00), the balance of the purchase price stipulated to be paid in said contract, and offered thereby to fulfill their obligation under said contract to the said defendant, to which finding defendant at the time duly excepted. 8. The court doth further find that on the said 30th day of April, A. D. 1910, and ever since said date, the said defendant, Edward Francis, did refuse, and yet doth refuse to make and deliver his warranty deed for the lands described in the aforesaid contract to the said plaintiffs, as he had agreed to do in said contract, to which finding defendant at the time duly excepted. 9. The court doth further find that said defendant, on July 1st, A. D. 1907, same being the time when the aforesaid contract was entered into, was a married man, the head of a family, and was residing upon and occupying a portion of the lands described in said contract as a homestead with his wife and family, and has continued to reside upon and occupy the same up to the present time. 10. The court doth further find that the wife of defendant did not join in the execution of the aforesaid contract, and has not assented thereto. 11. The court doth further find that said defendant, having claimed that said contract was null and void by reason of the fact, as aforesaid, that defendant was occupying a portion of said land with his wife and family as a homestead, as set out by defendant in the second defense in his answer and cross-petition filed herein, and that plaintiffs having, by way of reply to defendant's said second defense in defendant's an-

swer, alleged that they were at all times willing to let defend-
ant select his said homestead to the extent of one hundred
and sixty (160) acres from the body of the lands described
in the aforesaid contract, that because of no evidence having
been offered, designating metes and bounds, or by any de-
scription, the lands claimed by defendant as his homestead,
that the court therefore is unable to make a finding, desig-
nating, from the body of the lands described in the con-
tract in suit here, any particular one hundred and sixty
acres of said lands to be set aside as a homestead to said
defendant, and to exclude from the lands described in said
contract.   12. The court doth further find that the said de-
fendant has been, and yet is in the continued and undis-
puted possession of all the lands described in said contract
since the 1st day of July, A. D. 1907, and has enjoyed the
rents and profits of the same since said date.   13. The court
doth further find that Edwin Delahoyde, on the 30th day of
April, A. D. 1910, as his portion of the final purchase
money under said contract. deposited in the Stock Growers'
National Bank of Cheyenne. Wyoming, the sum of four
thousand dollars ($4,000.00), to be paid to defendant here-
in, making up the final payment under said contract, and
that said four thousand dollars ($4,000.00) is yet, and up
to this date, held by the said Stock Growers' National Bank
of Cheyenne, Wyoming, and that said Edwin Delahoyde
has been deprived of the use of said four thousand dollars,
($4,000.00) ever since said 30th day of April, A. D. 1910,
to which finding defendant at the time duly excepted."

"Conclusions of Law. And as and for its conclusions of
law, the court doth find:   1. That by reason of the fact of
defendant having refused to convey to plaintiffs by good
and sufficient warranty deed, the lands described in the
aforesaid contract, on the 30th day of April, A. D. 1910,
that thereby the said defendant has violated the terms and
conditions of said contract to be fulfilled on his part, to
which finding defendant at the time duly excepted.   2. The
The court doth further find that by reason of said defend-
ant having failed to comply with the terms and conditions

of said contract, upon the tender to him by plaintiffs of the purchase price due thereunder by the plaintiffs on the 30th day of April, A. D. 1910, defendant has become liable to damages to the said plaintiffs, to which finding defendant at the time duly excepted. 3. The court doth further find that the measure of damages for whcih defendant is liable in this case to the plaintiffs herein is the interest on the sum of three thousand six hundred and twenty-four dollars ($3,624.00) paid by John Brown and Charles E. Cotton on the 1st day of July, 1907, together with the sum of three thousand six hundred and twenty-four dollars ($3,624.00), to which finding the defendant at the time duly excepted. 4. The court doth further find that under the measure by which damages are assessed by the court in this case, the said Edwin Delahoyde is entitled to interest at the rate of eight per cent per annum on the said four thousand dollars ($4,000.00) from the 30th day of April, A. D. 1910, to which finding defendant at the time duly excepted."

Judgment was rendered as follows:

"It is, therefore, ordered, adjudged and decreed by the court: First, that the plaintiffs do have and recover judgment against the said defendant, Edward Francis, for the sum of three thousand six hundred and twenty-four dollars ($3,624.00), together with interest at eight per cent per annum on said sum from the first day of July, A. D. 1907, and for the sum of nine hundred and fifty-two dollars and fifty-six cents ($952.56), same being interest at eight per cent per annum on the sum of four thousand dollars ($4,000.00) from the first day of May, A. D. 1910, making a total of six thousand and forty-three dollars and four cents ($6,043.04). Second, it is further ordered, adjudged and decreed by the court, that upon payment of the aforesaid sum of money to plaintiffs herein by the said defendant, the said plaintiffs be ordered and adjudged and decreed to cancel, at once, upon the records in the County Clerk's office of Laramie County, the contract in suit here, together with its assignment and the extensions of said contract, and that upon such payment of the aforesaid judgment

money by the defendant to plaintiffs herein, said contract be, and the same is, hereby cancelled. Third, it is further ordered that the defendant pay the costs of this action incurred. To which judgment the defendant at the time duly excepted. To all of which findings and judgment the plaintiffs then and there duly excepted."

1. It is assigned as error that the findings of fact, conclusions of law and judgment are not sustained by the evidence and are contrary to law. It will be observed that the court upon the issues and proof denied plaintiffs a specific performance of the contract, but awarded them damages for its alleged breach. The action of the court in denying a specific performance of the contract is not complained of by the plaintiffs, and whether the court erred in that respect need not be here considered other than to say that this ruling of the court in the absence of objection and exception by plaintiffs affirmatively established that issue upon the record in favor of defendant. The case then presents the question as to what amount of recovery for breach of a contract is permissible where one or both parties to the contract are in default. In Smith v. Krall et al., 9 Idaho, 535, 75 Pac. 263, an action was brought on a written agreement and a supplementary one to sell certain described real estate at a stipulated price, part of which was paid in cash and the balance in promissory notes. The terms and conditions were mutual and the court found that both parties were in default and that in such case a court of equity will place the parties as nearly in *statu quo* as possible. This rule obtains as a right to cancel a contract and is found in §688 of Pom. Eq. Rem., and is supported by abundant authority. It is an application of the rule that in equity the party asking relief must come into court with clean hands and good faith. It is elementary that a contracting party who is without fault upon breach of the contract by the other party may elect to sue and recover damages for a breach of the contract, or he may recover back money paid as upon a consideration which has failed. (Reusens v. Mexican Nat.

Const. Co., (C. C.) 22 Fed. 522). Where damages are sought for the refusal or failure to sell land pursuant to the terms of a contract for a stipulated price the measure of damages in the absence of an agreement to the contrary is the difference between the contract price and the value of the land at the time appointed for the completion of the sale.

In the case before us it is not alleged nor is there any evidence as to the value of the land which was the subject of the contract at the time the deeds were to be executed. It follows that plaintiffs' right to recover and the amount if any to which they were entitled must be limited to a recovery back of the amount which they had paid, together with interest.

The evidence is undisputed that part of the purchase price was paid and upon the facts the plaintiffs were plainly entitled to recover back the amount so paid. Such amount, that is to say, the amount paid on the contract, was in dispute, and that question comes up for consideration of defendant's exception to the fourth finding of fact, wherein the court finds that John Brown and Charles E. Cotton paid to Edward Francis the sum of three thousand six hundred and twenty-four dollars ($3,624.00), the amount of the first payment on the contract, on July 1, 1907, the day of its execution. The evidence is undisputed that one-half of this sum was paid by Brown's check, and that Charles E. Cotton wrote and signed his individual check for the sum of $1,812, payable to order of and handed it to Francis, who accepted it as one-half of the first payment. Subsequently or shortly thereafter and before this check had been cashed it again came into the possession of Charles E. Cotton, who testified that it was turned over to him as part payment of the amount due him upon a contract for services in making the deal and to which Francis assented. Francis denies this in his testimony, but the evidence tends to show that at no time did he claim to plaintiffs that the first payment had not been made in full until after he had refused to execute the deed,

basing such refusal solely on the ground that his wife, who was not a party to the contract, would not sign the deed, as it would take away her homestead right. It will be observed that the evidence upon the question of this payment is in sharp conflict and we must accept the finding thereon. Bearing in mind that the defense here is not based upon fraud or conspiracy to defraud and none is alleged in the answer, nor was Brown a party to the return of the check, the evidence as to what became of the check after its acceptance by Francis tends to support no issue in this case, and if there be a cause of action in favor of Francis against Charles E. Cotton for converting the check, that is a matter that can be settled between them by an appropriate action. The trial court having found upon this evidence in favor of the plaintiffs, this court cannot say that the finding was wrong or that it was not supported by the evidence, for it was within the power of Francis to treat the check as property and apply it to the payment of his individual indebtedness to Cotton instead of cashing it at the bank and applying the cash to the payment of such indebtedness. We limit what we here say to the fact whether the check was received by Francis as a joint payment by Charles E. Cotton and Brown, and treat the question as to what finally became of the check as not within the issues of this case, but as a matter between Charles E. Cotton and Francis.

The defendant before plaintiffs commenced this suit tendered to and through Brown to plaintiffs the sum of $1,812 and interest from the date of the contract to the date of the tender, claiming that this was all that plaintiffs were entitled to. The tender was refused by plaintiffs, and in view of the issues and the finding of the court as to the amount to which plaintiffs were entitled to recover and which finding is supported by the evidence, the plaintiffs were under no legal obligation to accept the tender, for it was less than they were entitled to. (Fidelity Savings Assn. v. Bank, 12 Wyo. 315, 75 Pac. 448.). We are therefore of the opinion that the trial court's finding and

judgment thereon for the sum of $3,624, with interest, ought not to be disturbed.

By its fifth and sixth findings of fact the court found that Charles E. Cotton on August 5, 1907, made an assignment of his interest in the contract to Edwin Delahoyde and E. D. Cotton, two of the plaintiffs in this suit, and that the date stipulated in the contract on which to make final payment, to-wit: May 1, 1908, was by mutual agreement between the parties extended until May 1, 1910.

The seventh finding of fact to the effect that on April 30, 1910, plaintiffs John Brown, Edwin Delahoyde and E. D. Cotton duly made proffer and tender of $16,000, the balance due under said contract to the defendant, Edward Francis, and by its eighth finding the court finds that on April 30, 1910, and ever since said date the said Francis did refuse and yet doth refuse to make and deliver his warranty deed for the land, as he had agreed to do in the contract. This finding must be considered in connection with the thirteenth finding of fact to the effect that Edwin Delahoyde on the same day, as his portion of the final payment of the purchase money under the contract, deposited in the Stock Growers National Bank of Cheyenne, Wyoming, the sum of four thousand dollars ($4,000), and that said sum has been from that day up to the date of the judgment held by said bank and that Edwin Delahoyde has been deprived of the use of said money, and in connection with the fourth conclusion of law to the effect that said Delahoyde is entitled to interest on said sum of $4,000 at the rate of eight per cent per annum from and after April 30, 1910. The judgment includes an item for this interest of $952.56. We think the court erred in allowing this interest as an item of damages. According to the findings of fact, the contract was broken when Francis refused to make the deed and accept the final payment on April 30, 1910. The cause of action, if any, accrued for breach of the contract at that time. There is no theory upon which a standing tender can be sustained in this case. In so far as Delahoyde's remedy is concerned that had accrued, and

as we have already seen he and the other plaintiffs upon
this record were entitled to maintain this action to recover
back the money paid upon the contract with interest there-
on from the date of such payment.

It is unnecessary to consider the other assignments of
error. The questions discussed and the conclusions reached
require a modification of the judgment limiting the amount
thereof to the sum of $3,624.00, and interest thereon from
July 1, 1907, to the date of the entry of the judgment com-
plained of and the judgment will be so modified and as so
modified will be affirmed.

POTTER, CHIEF JUSTICE (concurring).

I concur in the disposition to be made of this case. The
trial court having found that the plaintiffs had complied
with their contract, and the plaintiffs not complaining of
the failure of the court to grant specific performance, the
ground upon which that relief was not granted is, perhaps,
immaterial, but I think it is to be gathered from the find-
ings that it was not granted for the reason that the wife of
the defendant had not signed the contract and the court
was unable to designate and set apart any part of the land
as a homestead. Upon the theory that the plaintiffs had
complied with the contract, and that the defendant, with
or without fault on his part, was unable to convey the
property, or, being able, refused to do so, then, in either
case, in the absence of specific performance, the plaintiffs
were entitled at least to be reimbursed for the money which
had been paid to the defendant upon the purchase price.
And that appears to have been the measure of damages
adopted by the trial court. Indeed, there was no other
evidence of damages, except that there was some testimony
relating to rents and profits which plaintiffs were seeking
to recover if they were found entitled to specific perform-
ance.

It is undisputed upon the evidence that Brown, one of
the parties to the contract and one of the plaintiffs in the
action, paid one-half of the amount that was required to be

paid on the date of the contract. On the same day C. E. Cotton, the other party to the contract, handed his check for a like amount to Mr. Francis to complete said first installment. That check afterwards came back into the possession of Mr. Cotton without having been cashed. The evidence as to the manner in which that occurred is in direct conflict. Mr. Cotton testified that Francis came back into his office after having received the check, and handed the check to him saying that he handed it back to him on what he, Francis, owed him on the deal; the exact language of his testimony in that respect being as follows: "My statement is that the day the contract is dated, the day it was signed, was the day and date the checks were turned over to him at my office and he accepted them and went out. * * * * He brought the check back, endorsed it and took credit for it. He brought the check back to me after having gone to the Citizens Bank with Mr. Brown. He brought the check back and said: 'Take this back on what I owe you on the deal.' * * * * After the check was turned over we all went to the Stock Growers Bank and put the contract in escrow." He further testified that when the check was returned to him Francis took a receipt for the amount thereof as part of what was owing to him, Cotton. Francis denies that Cotton obtained the check in the manner testified to by him, and gave a different version of the transaction from which it is contended that the check had never been delivered to Francis or accepted by him in such a manner as to constitute the transaction a payment of Cotton's one-half part of the first instalment of the purchase price required by the contract to be paid at the date thereof and acknowledged therein to have been paid.

The question whether the first payment had been made was within the issues, for if that payment had not been made then the plaintiffs had not complied with their part of the contract. Whether it was made or not depended upon the view to be taken of the evidence respecting the manner of delivery and acceptance of Cotton's check. Upon the

conflicting evidence concerning that matter the trial court found that the payment as required by the contract was made. If the first payment was made, then the proper amount to complete the purchase price was tendered. The evidence as to the payment of one-half of the amount of the first instalment that was to be paid by Cotton, being, as above stated, in direct conflict, the finding of the trial court on that matter should not be disturbed and we must consider the case from the standpoint that the first payment was made. The first required payment having been made, a fact which we accept as established in the case, the return of Cotton's check to him was equivalent to handing him the amount thereof in money, and whether, as between him and Francis, he thereby received something to which he was not entitled is not within the proper issues of this case.

It is very clear that the amount allowed for interest on the sum tendered by Delahoyde is not recoverable by the plaintiffs as damages. We suppose that it was allowed on the theory that it was necessary to keep the tender good. I am not satisfied that the evidence sufficiently shows that the amount was deposited and retained in the bank in such a manner as to keep the tender good, and deprive Delahoyde of the use of the money. But, aside from that question, if it was necessary for the plaintiffs to keep the tender good beyond asserting in the petition in the action a readiness to pay the balance of the purchase price, it does not appear that any other part of the price tendered was so held, retained or deposited as to keep good the tender of the whole amount of the purchase price. Upon the theory, therefore, that it was necessary to keep the tender good, we do not understand that keeping good the part of the amount which was to be paid by Delahoyde would have been sufficient. But under the circumstances of the case, the defendant having refused to accept the money when tendered and refused to convey the property, it was unnecessary for Delahoyde to keep the money on deposit in the bank subject to the acceptance of Francis, but it was

sufficient for the plaintiffs to allege in the petition, after showing that the balance of the purchase price had been tendered, that they were ready, able and willing to pay the amount thereof, or they could have deposited the same in court. We cannot agree, therefore, with the conclusion of the trial court that Delahoyde was deprived of the use of the money by the defendant's refusal to accept it when tendered or to convey the property. Whether, by keeping the tender good if necessary, he would have been entitled to interest upon the amount is a question upon which I express no opinion.

BEARD, JUSTICE, concurs in the conclusions reached in the foregoing opinions.