## WYOMING CENTRAL IRRIGATION CO.
## v. LAPORTE.

(No. 878, Decided July 21st, 1919; 182 Pac. 485.)

APPEAL AND ERROR—ADMISSION OF DEPOSITION—DEFECT IN CROSS-PETITION CURED BY ANSWER—BREACH OF CONTRACT—WATER AND WATER COURSES—SALE OF WATER RIGHTS—DAMAGES FOR NON-DELIVERY OF WATER—SUBMISSION OF SPECIAL FINDINGS TO THE JURY—VERDICT ON CONFLICTING EVIDENCE—DAMAGES—INTEREST—JUDGMENT.

1. A defect in a cross-petition in failing to allege a breach of contract may be cured by admissions of the answer thereto.

2. The submission of special findings to the jury is a matter within the sound discretion of the trial court, and only a clear abuse of judicial discretion, prejudicial to the complaining party, will justify reversal.

3. A contract for the sale of water rights for irrigation providing for delivery at a point to be selected by plaintiff within three miles of the land, but silent as to the time of delivery, under which plaintiff indicated the point where water should be delivered, and defendant commenced to

make delivery in the spring, but failed to make delivery thereafter during the irrigation season, held sufficient to support an action for damages, though the first of six annual installments for payment for the water rights was not due until after such irrigation season.

4. Where the deposition of a witness was taken in shorthand under an agreement that it should be transcribed, and be subject to objections, which, if made, should be passed upon by the Court before read, and each objection was ruled upon as the questions were read, no answer being read to the jury to which objection had been sustained, the fact that the deposition was not reduced to writing until the day it was offered, and the plaintiff had no opportunity to file general objections under the statute, was not prejudicial.

5. Where the evidence is conflicting, but there is substantial evidence to support the verdict, it will not be disturbed on appeal.

6. The amount of damages resulting from a breach of contract for furnishing water for irrigation, not being susceptible of easy proof, nor ascertainable by mere computation, the general rule that interest is not allowable on unliquidated damages should be applied.

7. Where interest was improperly allowed, but the amount thereof was stated by the jury in its special findings, the judgment should not be reversed, but should be modified by deducting the amount allowed as interest from the amount of the judgment.

ERROR to District Court, Natrona County, HON. WILLIAM C. MENTZER, Judge.

Action by the Wyoming Central Irrigation Co. against Nina A. Laporte to recover upon a contract for the delivery of water for irrigation, and the foreclosure of the contract. There was a judgment for defendant on a counter-claim and plaintiff brings error.

*Edward H. Stearns* and *P. B. Coolidge* for plaintiff in error.

*Defendant's cross-petition fails to state facts sufficient to constitute a cause of action.*

The written contract set forth controls its effect as a legal conclusion (Patrick v. Smelting Co., 38 Pac. 236; Hanover

Co. v. Wilson, 143 Pac. 345). A condition precedent is determined from the intention of the parties (Frank v. Stratford-Hancock, 13 Wyo. 37; 77 Pac. 134; 39 Cyc. 1620). Payment of the first installment was a condition precedent to the use of water, and performance must be completed; the rule applies to a counter-claim (Hedstrom v. Baker, 13 Ill. App. 104). If waiver is relied upon it must be pleaded (Ins. Co. v. N. Y., 111 Pac. 507; Cement Co. v. Ulman, 140 S. W. 610). Failure to state facts sufficient to constitute a cause of action is never waived (31 Cyc. 608; Reed v. Browning, 30 N. E. 704; Grover Co. v. Ditch Co., 21 Wyo. 204; 131 Pac. 43). The evidence is insufficient to establish a cause of action against plaintiff, the first installment of contract not being paid (Johnson v. Tyng, 37 N. Y. S. 516; Omaha Water Co. v. Omaha, 156 Fed. 922; Godchaux v. Lumber Co., 59 So. 33). The Court erred in refusing an instruction as to the effect of failure to perform. The cross-petition fails to state a breach of contract; this is a fatal defect (Canal Co. v. Peters, 46 Pac. 74). There is a lack of allegation and of proof to show a breach of contract by plaintiff; the evidence shows that more water was used on the land than the contract called for; damages for failure to furnish water are unsupported by evidence (Crow v. Irr. Co., 62 Pac. 562). Objections to the reading of the deposition of Richards should have been sustained; the statute requires depositions to be filed at least one day before the trial, thus affording an opportunity to file written objections thereto (4579-4584 C. S.); plaintiff was entitled to an objection that deposing witness was no longer absent from the county (4578 C. S.; Sells v. Haggard, 21 Neb. 357, 32 N. W. 66, 13 Cyc. 988; Mo. R. R. Co. v. Elliott, 51 S. W. 1067). The court erred in permitting the admission of conclusions of the witness Richards as to who was responsible for lack of water (Modern Laws Ev. 1719; Chamberlayne 2349). There was no evidence that diversion of water by lesses of plaintiff in error during the season of 1908 was with its sanction. Instruction No. 8, given by the Court, is not in accord with the evidence. There

was insufficient evidence upon which to predicate damages, if damages were sustained by the defendant in error, and the burden of proof was upon her. (Howard v. Brown, 148 N. W. 987.) The Court erred in refusing to submit special findings requested by plaintiff (4511 C. S.; Burke v. McDonald, 33 Pac. 49). The Court erred in instructing the jury to compute interest on damages found for defendant on her cross-petition, which were unliquidated (Rawlins v. Murphy, 19 Wyo. 253, 22 Cyc. 1512; Terrea v. Chabot, 121 Cal. 233; 53 Pac. 689; Anderson v. Adams, 74 Pac. 215). The Court erred in permitting the witness Richards to testify as to the total damage alleged to have been sustained by defendant (Old v. Keener, 43 Pac. 127). The Court erred in permitting evidence to be introduced as to the cost of planting defendant's crop, and in permitting defendant to state conclusions as to matters of which she admitted she was unable to state the facts (3 Chamberlayne, Sec. 1818). It was error to permit a cross-examination of plaintiff's witness as to complaints by other persons of insufficient water. The court erred in refusing to strike answers from the testimony of Witness Leon Laporte. The Court erred in permitting expert testimony from persons not qualified as experts (B. & O. R. R. Co. v. Shultz, 1 N. E. 331). The evidence clearly established a waiver of damages long prior to commencement of the suit.

*J. J. Spriggs,* for defendant in error.

Plaintiff admitted its obligation to furnish water under the contract in the year 1907, and having failed to do so, was liable in damage (Wyo. Cent. Irr. Co. v. Burroughs (Wyo.)., 115 Pac. 434). It cannot change front on appeal (Farmer Bank v. Zokk (Mo.), 113 S. W. 678).; while there was a conflict in the evidence on the question of damages, there was evidence to support the verdict and it will not be disturbed on appeal. (Madill Co. v. Davidson, 157 Pac. 354; Cassady v. Stuart, 161 Pac. 1026; Eoff v. Alexander, 161 Pac. 807; Tucker v. Railway Co. 161 Pac. 1147; Husband v. Hussey, 161 Pac. 1170.) An allegation that the

complaining party has performed all conditions of the contract is a sufficient allegation of performance of conditions precedent. (4411 C. S.) The answer set forth a statement of defects in ordinary and concise language which was all that was required (4389-4390 C. S.). Pleadings are to be liberally construed (4416 C. S.) and immaterial defects disregarded (4438 C. S.). Courts will give sufficient contracts as the one here involved reasonable construction. (Melco v. Ins. Co., 59 Washington 681; 106 Pac. 194, 28 L. R. A. N. S. 593.) Defendant is entitled to interest, since her damages are easily computed. The appeal should be dismissed, since there was no motion for a new trial, as to the judgment complained of (Mill Co. v. Keith Co., 156 Pac. 943). The record on appeal was not certified as required by law (Campbell v. Bank, 158 Pac. 267).

BEARD, CHIEF JUSTICE.

This suit was commenced in the district court of Fremont county by the plaintiff in error against the defendant in error to recover the amount alleged to be due on a certain written contract for water rights for certain lands of defendant situated in said county, and for the foreclosure of said contract. The defendant filed a cross-petition or counter-claim claiming damages for alleged failures of plaintiff to furnish defendant with sufficient water, as required by the contract, during the years 1907 and 1908. Plaintiff applied for a change of judge, and Hon. William C. Mentzer, Judge of the First Judicial District, was called to try the case; and on plaintiff's application the place of trial was changed to Natrona county. Trial was had to a jury, resulting in a verdict and judgment in favor of defendant and against plaintiff for $6,885.25 and costs; from which judgment plaintiff brings the cause here on error.

By the terms of the contract upon which suit was brought, the plaintiff agreed to sell to the defendant "four perpetual water rights, to have the use of the waters flowing through that portion of its irrigation system constructed, or to be constructed, for the irrigation of the lands herein described,

each water right representing and being the perpetual right to the use of one-half cubic foot of water per second of time, during the irrigation period of each year, the delivery and measurement of said water from the canal of said party of the first part (plaintiff) and its lateral ditches to be made by and in such manner as the said party of the first part may from time to time deem and determine for the best interests of both of said parties to this agreement and all others who hold like rights under similar agreements. This agreement for the sale of said water rights is hereby made subject to and under the express terms and conditions hereinafter set forth, to all and every one of which said terms and conditions the party of the second part (defendant), for herself, her heirs, and assigns, expressly consents and agrees: 1. The said party of the first part, its successors and assigns, is to furnish and deliver, at the point of delivery determined upon by said party of the first part, which said point is not to be more than three (3) miles from the lands hereinafter described, the amount of water, in said water right provided for, to the said party of the second part, her heirs and assigns, continuously, during the irrigation season of each year, except as hereinafter provided, and at no other time. 2. The said water shall be delivered by the said party of the first part, its successors or assigns, to said party of the second part, her heirs or assigns, from one of its main canals, subsidiary canals or lateral ditches, and the manner of withdrawing, distributing and regulating the supply of water from said system of irrigation works shall be prescribed, and its system maintained and operated, by the said party of the first part, its successors or assigns, in accordance with such rules as its Board of Trustees shall from time to time determine. 3. Said water shall be used for domestic and irrigation purposes only and only upon the piece or parcel of land, situate, lying and being in the County of Fremont, State of Wyoming, and more particularly known and described as follows, to-wit: North East Quarter of South East Quarter of Section thirty-four; North half of Southwest Quarter and Northwest Quarter of

South East Quarter of Section Thirty-five, all in Township One North of Range Four, East of Wind River Meridian, containing one hundred and sixty acres."

The consideration to be paid for each of said water rights was $1,000.00, payable in installments. The first payment on each right to be $200.00, and the balance to be paid in five annual payments thereafter, of $160.00 each. The time for making the first payment, according to the printed contract, was when notice was given by plaintiff to defendant that it was ready to deliver water. That date was changed in writing upon the margin of the contract before the contract was executed so that the first payment on one of said water rights was to be made October 1, 1907, and on the other three October 1, 1908. It was provided among the numerous terms and conditions in said contract, "if from hostile diversion or obstruction, forcible entry, temporary damage by flood, or other accident, or any other cause beyond the control of said party of the first part, its successors or assigns, the full amount of water herein contracted for cannot be furnished as herein provided, the said party of the first part, its successors or assigns, shall not be in any way liable because of any such shortness or deficiency of water supply occasioned by any of said causes." The contract was executed May 8, 1907. It is very long, but we think the foregoing statement covers all of the terms thereof which are involved in this action.

On the trial the court instructed the jury, in substance, that under the pleadings and evidence there was due and owing to the plaintiff from the defendant under the contract the sum of $5,671.64, and that it should render a verdict for that amount in favor of plaintiff and against defendant on the causes of action set out in plaintiff's petition. The jury returned its verdict as directed on plaintiff's causes of action. On the causes of action set up in defendant's cross-petition or counter claim, the jury returned its verdict in favor of the defendant and against the plaintiff in the sum of $12,-556.89. The jury also by direction of the court returned special finding from which it appears that of said last men-

tioned verdict $8,312.55 was principal and $4,244.34 was interest. The court set off the amount of the verdict in favor of plaintiff against the amount of the verdict in favor of defendant and gave judgment in favor of defendant and against plaintiff for the difference, to-wit: $6,885.25, and costs.

At the close of defendant's evidence plaintiff orally moved the court to direct a verdict in favor of plaintiff and against defendant on the cross-petition or counter claim on the ground of insufficienty of evidence to sustain the same. The motion was denied, and that ruling is assigned as error. Also, at the conclusion of the evidence, plaintiff filed a motion to dismiss the cross-petition and to strike out all evidence taken thereunder for the reason that under the terms of the contract plaintiff was not required to furnish defendant water until the first payment was made, and that it was admitted that the first payment was not made until May 15, 1911. Also a motion for judgment in favor of plaintiff and against defendant on the cross-petition, on the ground that neither the cross-petition nor the facts therein alleged nor the evidence were sufficient to support any claim for damages. Said motions being denied, the rulings thereon are assigned as error.

There was no error in either of those rulings. By the express terms of the contract the first payment on one of the water rights was not to be made until October 1, 1907, and on the other three October 1, 1908; and the evidence was to the effect that the irrigation season in each year ended about October 1. The motions covered the entire claims and were not good for that reason, and also for the reason that there was evidence which required the court to submit the questions of fact to the jury. The time when plaintiff was to commence the furnishing of water was not definitely fixed by the contract, nor was the point of delivery definitely stated, but it was to be at some point within three miles of the land, which point of delivery was to be determined by plaintiff. The undisputed evidence of the manager of plaintiff is that at or about the time the contract was signed he

told defendant that plaintiff would build a lateral to her place. He testified as follows:

"Q. I ask you the question if you didn't tell Mrs. Laporte in 1907 that if she would sign the contract, you would bring the lateral to the corner of her fence free of cost? A. I don't know that I told her if she would sign the contract, I would do that. I told her I would build the lateral to her place. Q. Free of cost? A. Free of cost." Plaintiff constructed the lateral accordingly and commenced the delivery of water in the latter part of May or forepart of June, 1907. By so doing, the point of delivery was determined by the plaintiff, and the lateral so constructed was a part of its irrigation system and under its control. The lateral and the right of way for the same were the property of plaintiff, and the claim that this was not done under the contract is without merit. No other time or point of delivery is shown by the evidence. Plaintiff having determined and stated to defendant at what point it would deliver the water, and having commenced to do so in the spring of 1907, if, as defendant alleged, it failed to do so during the irrigation season of that year, to the defendant's damage, it was not in a position to complain that defendant did not make the payment October 1, 1907. The damages for that year, if any, were sustained before anything was due.

It is contended that the cross-petition fails to allege a breach of the contract in that it does not allege a failure to deliver water within three miles of defendant's land. It is alleged in the cross-petition, in substance, that under the terms of the contract plaintiff agreed to deliver sufficient water to irrigate the lands described to the amount of one-half cubic foot per second of time for each of said water rights during the irrigation seasons of 1907 and 1908, and that it failed to do so. In its answers to said cross-petition, and to each count thereof, plaintiff says: "It admits that, under the terms of said water contract, the plaintiff contracted and agreed to deliver, at the point of delivery determined upon by the plaintiff, the amount of water in said water contract provided for." And it also avers that if at

any time during said irrigation season it failed to deliver the full amount of water contracted for, it was through its inability so to do by reason of breaks in its canal caused by floods and other causes beyond its control, which breaks were repaired as speedily as possible. If there was any defect in the cross-petition it was cured by plaintiff's answer thereto.

It is further contended that the court erred in refusing to submit to the jury twenty-nine special findings requested by plaintiff. The court at plaintiff's request submitted to the jury eight other special findings by which the jury was required to find the amount of damages, if any, sustained by defendant to each kind of crops, and for each of the years 1907 and 1908. The court fully instructed the jury as to the measure of damages and what it should consider in arriving at the amount, as follows: "You are further instructed that should you find for the defendant on her cross-petition, in assessing the defendant's damages you will find for her the difference between the market value of the crops when matured that they would have made (if there be any difference), and that they did make (if there was any difference) and you will deduct from this amount, if any you find, such sums of money that the defendant would have had to expend that she did not expend, in harvesting, maturing, threshing, and placing said crops on the market." The jury found specially the amount of damages it awarded defendant on each kind of crops for each of the years 1907 and 1908; and it must be assumed that in fixing the several amounts that it followed the instructions; and we think the questions submitted to the jury and its answers thereto sufficiently show that it did so. The submission of special findings to the jury is a matter largely within the sound discretion of the trial court. "Much latitude within the general rule governing the practice must be accorded to the trial court, and only when there appears to have been a clear abuse of judicial discretion prejudicial to the complaining party will the action of the court in the premises justify a reversal of the judgment." (Wallace v. Skinner, 15 Wyo.

233, 256, 88 Pac. 221, 226.)   Applying that rule to the case
at bar, it does not appear that the court abused its discretion
in refusing to submit the special findings complained of.

Plaintiff objected and excepted to the admission in evi-
dence of the deposition of the witness Richards on the
ground that it had not been reduced to writing until the day
it was offered to be read to the jury, and plaintiff had had
no opportunity to file objections under the statute to the
deposition.   The deposition of this witness was taken by
agreement by a stenographer in short hand, and it was
agreed that it should be transcribed; that it should not be
read in evidence until so transcribed; that the stenographer
should not be called as a witness, "and when transcribed by
him may be used in evidence in the above entitled cause,
subject to all objections to such evidence, which shall be
passed upon by the court before such deposition is read
in evidence."   It may be conceded that the parties intended
to have the court rule upon the objections before the deposi-
tion was read; but it appears that each objection was ruled
upon as the questions were read, and we are unable to see
how the plaintiff was in any way prejudiced by that method.
It does not appear that the answer to any question to which
the objection was sustained was read to the jury.

Very many objections were made and exceptions taken to
the rulings of the court in admitting and excluding offered
testimony, the motion for a new trial containing more than
forty pages of typewritten questions, objections, rulings
thereon, and the answers when the evidence was admitted.
It would serve no useful purpose, and would require a
volume of the reports to discuss them separately.   Very
many of the objections go to the weight rather than to the
competency, relevancy, or materiality of the testimony.   A
careful reading of the entire evidence in the record satisfies
us that no such prejudicial error, if error at all, was com-
mitted in that respect as would justify a reversal of the judg-
ment on that ground.

It is argued at great length in the brief that the verdict
and judgment are not sustained by the evidence.   On that

question it should be sufficient to say that the evidence is conflicting, and the jury having passed its judgment upon it, and the trial court having refused to grant a new trial, and there appearing in the record sufficient substantial evidence to support the verdict and judgment, under the well settled rule, this court will not reverse a judgment on that ground. Furthermore, several witnesses testified by referring to two maps, only one of which was put in evidence, and in describing the location of lands, canals, laterals and headgates evidently pointed out those places on the maps, using such expressions as "This land here. There was a division box here that put water into this ditch. The land on the west side of the railroad would be irrigated from this here," &c. (No railroad being shown on the map in the record.) Those are but samples of the testimony of several witnesses, which the jury could understand and apply, but which are unintelligible to one reading the testimony.

There is but one other question in the case which we deem necessary to consider, and that is the question of interest on the amount of damages the jury found the defendant had sustained. Those damages were entirely unliquidated, and the general rule is that interest is not allowed on unliquidated damages. To that rule there are certain recognized exceptions, viz: demands based on market values, susceptible of easy proof; and in cases where the amount is capable of being ascertained by mere computation. (Kuhn v. McKay, 7 Wyo. 65, 49 Pac. 473, 51 Pac. 205; City of Rawlins v. Murphy et al., 19 Wyo. 238-253, 115 Pac. 436.) In the present case the amount of damages was not susceptible of easy proof, nor could it be ascertained by mere computation. Many witnesses were called to testify to the facts necessary to a determination of the amount of the damages, and there was a substantial conflict in their testimony. We think the case is one clearly within the general rule and that it was error to allow interest. But, as the jury by its special findings, stated the amount of interest it allowed, the judgment should not be reversed on that ground, but should be modified by deducting the amount allowed as

interest from the amount of the judgment. The judgment being for $6,885.25, of which amount $4,244.34 is interest, the latter sum will be deducted from the former, leaving a balance of $2,640.91, for which amount the judgment is affirmed, and the cause remanded to the district court with directions to modify the judgment accordingly.

Each party to pay one half of the costs in this court, except that no costs will be taxed to either party for briefs.

*Modified and remanded.*

POTTER and BLYDENBURGH, JJ., concur.

