LOREN HANCOCK,

*Plaintiff and Respondent,*

vs.

CHARLES W. JOHNSON,

*Defendant and Appellant.*

(No. 2539; May 6th, 1952; 244 Pac. (2d) 285)

504

For the plaintiff and respondent the cause was submitted upon the brief and also oral argument of H. Glenn Kinsley of Sheridan, Wyoming.

For the defendant and appellant the cause was submitted upon the brief and also oral argument of Henry A. Burgess of Sheridan, Wyoming.

506

## OPINION

ILSLEY, Justice.

This case is here by direct appeal. Plaintiff and respondent Hancock states in his petition that as a general contractor he entered into a subcontract with defendant and appellant Johnson, a subcontractor, for the construction, repair and alteration of a school building at Buffalo, Wyoming, for the contract price of $26,000.00. A copy of the contract was attached to the petition and the provisions of the written contract insofar as they are material to the matters before us recite that Hancock is the contractor, Johnson the subcontractor; who:

"For the consideration hereinafter named, the said Subcontractor covenants and agrees with said Contractor, as follows:

"FIRST: The Sub-contractor agrees to furnish all material and perform all work necessary to complete the Grade School Building at Buffalo, Wyoming, School District No. 2. All brick work furnishing all labor and material including terra cotta, for the above named structure, according to the plans and specifications (details thereof to be furnished as needed) of Goodrich & Wilking Architects, and to the full satisfaction of said Architects.

"SECOND: The Sub-contractor agrees to promptly begin said work as soon as notified by said Contractor, and to complete the work as follows: as necessary.

"FIFTH: No extra work or changes under this contract will be recognized or paid for, unless agreed to in writing before the work is done or the changes made. "IN CONSIDERATION WHEREOF, the said Contractor agrees that he will pay to the said Sub-contractor, in monthly payments, the sum of Twenty-six Thousand ($26,000.00) Dollars for said materials and work, said amount to be paid as follows: Ninety per cent (90%) of all labor and material which has been placed in position by said Sub-contractor to be paid on or about the 10th of the following month, except the final payment, which the said Contractor shall pay to the said Sub-contractor within 30 days after the Sub-contractor shall have completed his work to the full satisfaction of the said Architect or Owner."

In the interest of brevity, the portions of the contract not material to the issues herein are omitted. The petition alleges that Johnson failed and neglected to furnish all materials and perform all work necessary according to said plans and specifications and defaulted in his contract; that Hancock took over the work and furnished materials as the general contractor, all of which should have been done by Johnson. An itemized account called "Exhibit B" is attached to the Hancock petition showing labor and material which he claims were necessary to complete the contract according to plans and specifications as required by the contract; that on January 13, 1950 Johnson and Hancock entered into an agreement, evidenced by a written memorandum, with respect to extra work required to be done and the amount to be paid by Hancock to Johnson therefor. A copy of the memorandum, attached to the petition and called

"Exhibit C" is as follows:

> "Buffalo, Wyo.
> Jan. 13, 1950.

Extra work agreed to between Loren Hancock and Chas. W. Johnson, as follows:

Raise lintels on 2nd floor................................$ 250.00
8″ wall in toilet room over 4″................................ 50.00
Wall around stairway in class room...................... 649.87
Raise door heads first floor................................ 114.16
8″ tile wall in bsmt. (Conc. blocks)...................... 35.00
8″ tile wall in janitors closet................................ 25.00

$1,124.03

"Chas. W. Johnson agrees to pay all outstanding bills for material and all labor required to finish brick work, and to finish and complete said work.

Chas. W. Johnson."

The itemized account referred to as "Exhibit B" supra, consists of some 73 items claimed to be furnished by Hancock which were in dispute. A condensation of the account is as follows:

"EXHIBIT "B"

STATEMENT OF ACCOUNT—BUFFALO SCHOOL
BRICK WORK CONTRACT

Loren Hancock, Dr.

to

Charles Johnson

Original Contract Price................................ $26,000.00
6 items of extras allowed and approved by
   architect i.e. Exhibit "C"................................ 1,124.03
Credit for 4 items................................ 83.86
Due Loren Hancock for 73 items.
   Last item April 30, 1950..........$ 4,653.87
By cash Hancock to Johnson....... 24,073.36

Totals................................$28,727.23  $27,207.89
Balance due Hancock from
   Johnson ................................ 1,519.34

$28,727.23  $28,727.23

Hancock prays for judgment in the sum of $1,519.34 and interest from May 30, 1950.

To this petition Johnson filed his Answer and counterclaims setting forth; in his first defense, a general denial; the second defense, admits the general contract; he alleges that Hancock's agent, David Carson, instructed Johnson to cease work on the school building on January 7, 1950, which was done; that on January 13, 1950 Hancock and Johnson agreed that work was to continue upon arrival of "glazed tile bull nose corners", which came March 6, 1950 whereupon Johnson finished his work on April 21, 1950; that any alleged delay in the performance of the agreement by Johnson was caused by Hancock with a wilful and purposeful design or negligence and carelessness, to interrupt Johnson's performance under the contract. The third defense states that any material and labor furnished by Hancock was voluntary and not authorized by Johnson, nor necessary.

Johnson then sets forth in his answer a first counterclaim, stating that of the $26,000.00 contract price only $24,073.36 has been paid, leaving a balance of $1,926.24 which Hancock refuses to pay. The second counterclaim claims Johnson has $1,124.03 as credit due him upon "Exhibit C" supra, which Hancock refuses to pay. The third counterclaim states that there is the sum of $903.00 due Johnson by reason of brick work performed by him at the instance of Hancock's agent and superintendent, David Carson, and in addition to the plans and specifications referred to in the subcontract "Exhibit A", attached to Hancock's petition.

There is a prayer for judgment for the items set forth in the three counterclaims and there are 17 interrogatories attached to the answer.

Hancock filed his reply by way of general denial to all defenses and counterclaims and answered all 17 inter-

rogatories. These answers are long and will be referred to later in this Opinion.

A trial was had, evidence introduced and the trial court rendered judgment for Hancock in the sum of $1,519.34, together with interest thereon at seven (7) percent per annum from May 30, 1950 to date of judgment, August 23, 1951 in the sum of $127.02, making in all the sum of $1,646.36 and costs, from which Johnson appeals.

Counsel for Johnson specifies as error that the judgment of the trial court is contrary to law and the evidence, and states that he realizes in so doing that this court must assume that the evidence in favor of the successful party (Hancock) is true, leave out of consideration entirely the evidence of the unsuccessful party, (Johnson) in conflict therewith and give to the successful party (Hancock) every favorable inference which may be reasonably and fairly drawn from it. Jacoby vs. Town of the City of Gillette, 62 Wyo. 487, 174 P. (2d) 505, 506, Eblen vs. Eblen 68 Wyo. 353, 234 P. (2d) 434.

It seems necessary to call attention again to the rule where there is conflicting testimony as stated in Conway vs. Smith Mercantile Co., 6 Wyo. 468, 46 P. 1084:

"The question is whether there is sufficient evidence to sustain these findings. It is not whether this court from the written report of the evidence, would so find. The trial court had most of the principal witnesses before it, giving that court the better opportunity to judge of their character and credibility."

See also Patterson vs. Hardware Co. 7 Wyo. 401, 52 P. 1085; Columbia Min. Co. vs. Duchess Min. Co. 13 Wyo. 244, 79 P. 385; Phelan vs. Cheyenne Brick Co. 26 Wyo. 495, 188 P. 354, 189 P. 1103; McFadden vs. French 29 Wyo. 401, 213 P. 760; Edwards vs. Willson et al, 30 Wyo. 275 at 278, 219 P. 233.

It appears from a complete examination of the record that practically all of the matters about which counsel

for Johnson complains are founded upon disputed questions of fact, resolved against Johnson by the trial court's findings and judgment.

Defendant Johnson states he is familier with these rules and then argues the facts in the instant case against them. To illustrate, counsel states, "appellant and defendant admits liability for all those items of labor and materials furnished by respondent (Hancock) to appellant's construction crew up to and including January 9, 1950." He refers to 39 items listed in Exhibit "B" supra aggregating $868.84. Johnson disclaims liability for the remainder of the account consisting of some 34 items aggregating $3,785.03. Now that part of the account is in dispute and the evidence with respect to it is conflicting. In that situation: "where there is substantial evidence to support the finding of the trial court the evidence being in conflict, this court will not interfere." Mulhern et al vs. Mahs 41 Wyo. 214, 284 P. 123; Dawson vs. Lieurance 68 Wyo. 477, 235 P. (2d) 457.

Counsel for Johnson states that Hancock prevented Johnson from completing the contract. Whether or not he was so prevented depended on the facts elicited on trial. We take it that the trial court considered the facts essential to Johnson's claim without which the claim could not be supported. It is clear that when Johnson presented his bill, dated January 5, 1950 for $6,093.82 to Carson, agent for Hancock, that shortly thereafter the work was closed down. Admittedly it was a bill for more than Johnson had coming. No doubt it was for extras. The fifth paragraph of the subcontract provided, "no extra work or changes under this contract will be recognized or paid for, unless agreed to in writing before the work is done or the changes made." (1) There was no writing under the contract providing for extras approving the sum of $6,093.82. Thereafter Exhibit "N" received in evidence, identical with Exhibit

"C" attached to Hancock's petition, was agreed upon whereby $1,124.03 was settled upon as a sum to be paid Johnson.

At a later date Johnson went back to work and finished the contract, so it cannot be said he was prevented from completing the contract. We have no quarrel with the cases cited by counsel i.e., Woodruff vs. Adams 25 P. (2d) 529, 134 Cal. App. 490; Johnson vs. DeWaard et al 298 P. 92, Bomberger vs. McKelvey 220 P. (2d) 729; F. J. Lewis Mfg. Co. vs. Snyder 37 Fed. (2d) 299, et al, in a proper case. However the facts in the instant case do not warrant the application of the doctrine therein set forth.

The answers to the Interrogatories attached to the Johnson petition were answered by Hancock and were received in evidence as Exhibit "J". Interrogatory Number 5, "At whose request were the common bricks contained in Exhibit 'B' (attached to Hancock's petition) purchased and paid for by you?" Hancock's answer is as follows:

"V.

"In Answer to Interrogatory Number 5, the School Board for whom the building was being constructed required that the building be constructed without further delay and would not sanction any further delay on the part of the defendant, Johnson. That the plaintiff as general contractor was required to proceed with the work and had made demand upon Johnson that he perform it but he neglected, failed and refused to carry out his Agreement and left his work to be performed by the plaintiff, who was required to do so."

Interrogatory Number 6, "At whose request did bricklayers work upon the school building at Buffalo?" The answer of Hancock:

"VI.

"In Answer to Interrogatory Number 6, the Answer to this question is the same as the answer to Question 5.

The plaintiff was the General Contractor and required to proceed with the construction of the building under his contract. The defendant had a sub-contract from the plaintiff as a brick-mason, but the defendant continually procrastinated, delayed and refused to conduct and carry on his work and complete it. The plaintiff was obliged to and did proceed with the work, all of which was approved and ratified by the defendant."

Without reviewing all of the evidence in detail and unnecessarily prolonging this Opinion we are convinced that the trial court's findings and judgment, except as to interest, are correct.

We think that the trial court was in error in allowing interest upon the sum of $1,519.34. We are convinced that the various claims or accounts between Hancock and Johnson were unliquidated claims. Certainly there was no agreement between the parties to this litigation as to the amount due. Many items were sharply disputed by both parties. In this connection a liquidated account or claim is; "That which is clear, certain, manifest, undisputed. A demand is not liquidated though it appears that something is due, unless it appears how much is due." Ballentine Law Dictionary 2nd Ed. 763, 1 Am. Jur. 250; Black's Law Dictionary 1121. If such were the case in the suit before us interest could be charged. These claims were unliquidated, that is to say:

"Unliquidated. Unpaid; not ascertained; not agreed upon, disputed. A demand is not liquidated or undisputed, even if it appears that something is due, unless it appears how much is due; and when it is admitted that one of two different sums is due, but there is a genuine dispute as to which is the proper amount, the demand is unliquidated. See 1 Am. Jur. 249 seq." Ballentine Law Dictionary 1319.

This court considered the matter of interest where unliquidated claims were involved in Dawson vs. Lieurance 68 Wyo. 465, 485, 486, 487, 488, 235 P. (2d) 457. It was there held that interest was erroneously allowed on unliquidated claims. See cases cited in Dawson vs.

Lieurance supra; Knutson vs. Lasher 219 Minn. 594, 18 N.W. (2d) 688; Lincoln Lumber Co. et al vs. Keeter 167 G. A. 231, 145 S.E. 68, 70; Binning vs. Miller 60 Wyo. 114, 146 P. (2d) 527, 535; United States vs. Davidson 71 Fed. Sup. 401-403; In re Demming Guardianship 192 Wash. 190, 73 P. (2d) 764-782; City of Richmond vs. Henricho County et al 185 Va. 176, 37 S.E. (2d) 873; In re Snows Estate 319 Mich. 333, 29 N.W. (2d) 826, 828.

The item of interest is disallowed and as thus modified the judgment of the District Court for Sheridan County is affirmed.

*Modified and Affirmed.*

BLUME, C. J., and RINER, J. concur.