**TENNECO OIL COMPANY, Appellant,**

v.

**Henry W. GAFFNEY, Appellee.**

**No. 8879.**

United States Court of Appeals
Tenth Circuit.

Nov. 29, 1966.

Robert C. Hawley, of Ireland, Stapleton, Pryor & Holmes, Denver, Colo. (William C. Jensen and Richard J. Spelts, of Ireland, Stapleton, Pryor & Holmes, Denver, Colo., Millard F. Carr, Denver, Colo., and William N. Armstrong, Houston, Tex., on the brief), for appellant.

James A. Clark, of Winner, Berge, Martin & Camfield, Denver, Colo., for appellee.

Before PICKETT, SETH and HICKEY, Circuit Judges.

PICKETT, Circuit Judge.

This is an appeal from a judgment of the United States District Court for the District of Colorado, awarding damages to appellee Gaffney for the failure of the appellant Tenneco Oil Company to give notice that an oil and gas lease, which Gaffney had assigned to Tenneco, would be permitted to terminate for failure to pay rentals when due.

On November 1, 1963, Gaffney acquired a Federal Oil and Gas Lease on 1536 acres of public domain in Campbell County, Wyoming. The lease provided, in part:

> "If there is no well on the lease lands capable of producing oil or gas in paying quantities, failure to pay rental on or before the anniversary date shall automatically terminate the lease by operation of law."

The lease further provided:

> "The lessee may surrender this lease or any legal subdivision thereof by filing in the proper Land Office a written relinquishment, in triplicate, which shall be effective as of the date of filing subject to the continued obligation of the lessee and his surety to make payment of all accrued rentals and royalties and to place all wells on the land to be relinquished in condition for suspension of or abandonment in accordance with the applicable lease terms and regulations."

Gaffney thereafter assigned to Tenneco a portion of the lease covering 720 acres. The assignment provided:

> "If Assignee or his assigns wishes to relinquish this lease at any time, he must offer reassignment to Assignor at least sixty (60) days before any rental due date or final lease expiration date, whereupon, if Assignor wishes to regain the lease, Assignor must give notice to Assignee within thirty (30) days of receipt of Assignee's notice."

In July of 1964, Tenneco drilled a test well to a depth of 5814 feet. No oil or gas was discovered, whereupon Tenneco determined that the area, including that portion obtained from Gaffney, was valueless. Without notice to Gaffney, Tenneco allowed the lease to terminate on November 1, 1964 for non-payment of annual rentals. Upon demand from Gaffney, Tenneco unsuccessfully attempted to regain a lease on the property for Gaffney. Thereupon Gaffney brought this action, alleging damages caused by Tenneco's failure to give the 60 days notice required in the assignment. There was no issue of fact as to Tenneco's liability, and the trial court sustained plaintiff's motion for summary judgment, holding that the notice of relinquishment provided for in the assignment, as a matter of law obligated Tenneco to give notice that the lease would be permitted to terminate for failure to pay annual rentals.

Tenneco argues that in determining its contractual duty to give notice, the meaning of the word "relinquish", as used in the assignment, should be the same as that in the lease and the Federal Regulations where relinquishment of a lease requires affirmative action on the part of the lessee and is distinguished from automatic termination because of failure to pay rentals. We agree with the trial court that the provision in the assignment should not be so narrowly construed.

■ Ordinarily, the construction of a contract presents a question of law. United States v. Continental Oil Co., 10 Cir., 364 F.2d 516. It is the court's duty to construe the instrument "so as to effectuate the manifest intention of the parties—to give life and vitality to the language the parties have used to express their agreement." Ryder Truck Rental, Inc. v. Central Packing Co., 10 Cir., 341 F.2d 321, 323–324, cert. denied 382 U.S. 827, 86 S.Ct. 60, 15 L.Ed.2d 71. "It is well established * * * that in interpreting a written contract, the court should, as far as possible, place itself in the position of the parties at the time of its execution, and then, from a considera-tion of the instrument itself, its purposes, and the circumstances surrounding its execution, ascertain the intention of the parties. * * * " United States v. Essley, 10 Cir., 284 F.2d 518, 520. When the lease and the assignment are considered together, along with the surrounding circumstances at the time of the execution of the assignment, it appears that the only reasonable interpretation to be given the notice requirement is that it included the failure to pay rentals. It is clear that the time requirement of the notice was designed to give the parties adequate time to perfect a reassignment to Gaffney before the lease would terminate, should Tenneco intend not to keep it alive. The notice provision in the assignment refers specifically to the rental due date of the lease or the final lease expiration date. While only the word "relinquish" is used in the assignment, if its meaning therein were limited to that of the lease, it would appear to serve little purpose in the assignment and would destroy the reference to rental due date. "(A) contract should not be so narrowly or technically interpreted as to frustrate its obvious design or so loosely construed as to relieve a party of an obligation or liability fairly within its scope or spirit." Nevada Half Moon Mining Co. v. Combined Metals Reduction Co., 10 Cir., 176 F.2d 73, 75, cert. denied 338 U.S. 943, 70 S.Ct. 429, 94 L. Ed. 581. Accordingly, we construe the term "relinquish" to have been employed in the sense of "abandon" or "give up." See, Webster's Third New International Dictionary.

■ The trial court held that Gaffney's damages were "not limited to the value of the leasehold interest and overriding royalty at the date of defendant's breach of contract, but are based upon the highest value of the leasehold interest from the date that plaintiff acquired the lease from the United States Government to the date of the commencement of this action." Shortly after the termination on November 1, 1964, a non-competitive lease was issued to Jack G. Ladmer, effective January 1, 1965. Lad-

mer assigned it to Hal A. McVey on December 2, 1964, effective January 1, 1965, for a consideration of $8.00 per acre and a 3% overriding royalty. On December 4, 1964, McVey assigned the lease to HLM Drilling Company, effective January 1, 1965, for $8.00 per acre and an additional overriding royalty of 1%. By assignment dated February 11, 1965, effective April 1, 1965, the drilling company conveyed the lease to Allied Chemical Corporation for a consideration of $15.00 per acre and an additional 1% overriding royalty. This conveyance was the last lease acquired by Allied Chemical to complete a drilling block. During the period preceding the drilling by Allied Chemical, Gaffney had assigned other portions of his original lease for $5.00 per acre with 3 and 3½% overriding royalties. One of these assignments was to Allied Chemical in May of 1965.[1] In determining that the measure of damages was the highest price which had been paid, prior to the commencement of this action, for the leasehold interest in question, the court reasoned that if Tenneco had not breached its contract, Gaffney "would have had opportunity to assign the lease for $15 an acre, and reserve a 5% overriding royalty." No finding was made as to the market value of the leasehold on the date of the breach. The price for which Gaffney would have sold the lease had there been no breach of the contract by Tenneco—if he would have sold it at all—is pure speculation and not the measure of his damages. While we have not found that the Wyoming Supreme Court has considered this precise question,[2] we think, however, that it has indicated that Gaffney's recovery should be determined as of November 1, 1964, the date of Tenneco's breach of the contract. In Redwine v. Fitzhugh, 78 Wyo. 407, 329 P.2d 257, reh. denied 78 Wyo. 426, 330 P.2d 112, 72 A.L.R.2d 664, the court was considering the measure of damages for the destruction of a growing crop. It held that the correct measure of damage was the value of the crop at the time it was destroyed. In a later case, Rocky Mountain Packing Co. v. Branney, Wyo., 393 P.2d 131, 134, the court considered a judgment for damages arising out of the conversion of personal property. It stated:

"As a general rule, of course, the measure of damages for the loss or destruction of personal property is its market value at the time of loss, if it has a market value."

An additional guideline is found in the analogous situation where a vendor, by reason of failure to convey, breaches an executory contract for purchase of real property which has appreciated in value. The applicable Wyoming rule has been stated as follows:

"Where damages are sought for the refusal or failure to sell land pursuant to the terms of a contract for a stipulated price, the measure of damages, in the absence of an agreement to the contrary, is the difference between the contract price and the value of the land at the time appointed for the completion of the sale."

Francis v. Brown, 22 Wyo. 528, 145 P. 750, 753. And, in Johnson v. McMullin, 3 Wyo. 237, 21 P. 701, 702, 4 L.R.A. 670 the court stated:

"The proper measure of damages was the value of the property at the time the deed ought to have been delivered * * *."

Furthermore, we are mindful of the general principle that only those damages which are the natural and reasonably foreseeable result of a breach of contract are recoverable. Schlottman v. Pressey, 10 Cir., 195 F.2d 343, cert. denied 344 U.S. 817, 73 S.Ct. 12, 97 L.Ed. 636. Accordingly, we conclude that the trial court erred in selecting the leasehold's

1. The court found: "In making the assignments to defendant H. L. Spearman and Allied Chemical Corporation, plaintiff believed after being advised by experts that $5 per acre was the 'going' price for oil and gas leases in the Olmstead Creek area."

2. The parties are in agreement that the instrument sued on is a Wyoming contract and controlled by Wyoming law.

highest sale price prior to this action as the sole and exclusive determinant of value. On remand, the court should consider all relevant evidence of market value, including other sales of the same or similar property, which were transacted reasonably close in time and distance and under comparable market conditions.

 The trial court allowed interest from November 1, 1964 on the amount of damages awarded. Tenneco contends that, under Wyoming law, the damages sued for were unliquidated and interest was not allowable prior to the entry of judgment. The Wyoming Supreme Court has followed the general rule that interest is not allowable on unliquidated damages. Hancock v. Johnson, 69 Wyo. 503, 244 P.2d 285; Dawson, Corbett & Shelp v. Lieurance & Canfield Constr. Co., 68 Wyo. 465, 235 P.2d 457; Binning v. Miller, 60 Wyo. 114, 146 P.2d 527; Johnson v. Hanover Fire Ins. Co., 59 Wyo. 120, 137 P.2d 615. It has, however, recognized an exception to the rule in which interest may be allowed on a claim based upon market value which is "susceptible of easy proof." Johnson v. Hanover Fire Ins. Co., supra; Yellowstone Sheep Co. v. Diamond Dot Live Stock Co., 43 Wyo. 15, 297 P. 1107, 75 A.L.R. 1151; Wyoming Central Irrigation Co. v. Laporte, 26 Wyo. 249, 182 P. 485. To come within the exception, the amount of the claim must be susceptible of ascertainment by computation according to some recognized standard. Interest is not allowable unless the person liable can determine the amount of the claim with such certainty that a tender of the amount may be made. Johnson v. Hanover Fire Ins. Co., supra; Kuhn v. Mc-Kay, 7 Wyo. 42, 49 P. 473, 51 P. 205. Although all the evidence relating to damages is not in the record, the findings and conclusions of the court disclose that there was no fixed market value from which Gaffney's damages could readily be computed. In his complaint Gaffney claimed $36,000 in damages, but his sales of similar oil leases in the area, including the one in question, were for

$5.00 per acre with a 3 or 3½% overriding royalty. There were other relevant sales of leases for different amounts. Until the judgment was entered, no one could know how much Tenneco was legally required to pay. Interest should not have been allowed prior to judgment

The judgment is reversed and the case remanded for findings consistent with the views herein expressed, each party to pay its own costs.