The **TELEX CORPORATION**, a Delaware corporation, **Plaintiff-Appellee,**

v.

**AiRESEARCH AVIATION COMPANY**, a division of the Garrett Corporation, a California corporation, **Defendant-Appellant.**

No. 71–1350.

United States Court of Appeals, Tenth Circuit.

May 9, 1972.

Richard E. Sherwood, Los Angeles, Cal. (Truman D. Rucker and M. Darwin Kirk, Tulsa, Okl., on brief), for defendant-appellant.

Floyd L. Walker, Tulsa, Okl., for plaintiff-appellee.

Before HILL, HOLLOWAY and McWILLIAMS, Circuit Judges.

HILL, Circuit Judge.

This appeal originates from an action filed in the Northern District of Oklahoma by The Telex Corporation (Telex) against AiResearch Aviation Company (AiResearch) to recover the amount of prior installments paid upon a contract for the purchase of an executive jet aircraft. AiResearch counterclaimed to recover damages for alleged breach of contract of purchase.

Trial of the case was had to the court without a jury. The judgment appealed from granted Telex the recovery prayed for and denied AiResearch recovery on its counterclaim.

The pertinent facts are as follows: After extensive negotiations, Telex agreed to buy from AiResearch a British Hawker-Siddeley DH–125 executive jet aircraft. An Aircraft Sales Contract was executed by the two parties on December 3, 1969, which provided, inter alia, that the total purchase price of $1,161,449 was to be paid in four installments. The first three installments, $83,000, $124,500 and $787,818, respectively, represented the purchase price of the bare airframe as received by AiResearch from the Hawker-Siddeley plant in England. The fourth and final payment of $166,131 was to pay for the customized completion of the airplane's interior and exterior appointments in accordance with the buyer's special orders, as well as to install the required radio and navigational devices. This customized completion was the obligation of AiResearch.

A Supplemental Agreement was executed simultaneously between the two contracting parties at the request of Telex executives for "particular internal reasons." Part 4 of the Supplemental Agreement, bearing the heading "Option of Buyer for Rescission", is the crucial part of the agreement between the parties insofar as the issues in this lawsuit are concerned. Paragraph (a) of that part provided, in substance, that The Signal Companies, of which AiResearch is a subsidiary, would lease or purchase Telex equipment having a value of not less than $1,161,449, the contract price of the airplane.[1] Paragraphs (b) and (c) provided that if The Signal Companies should not have committed themselves to the requisite amount of Telex products on or before May 30, 1970, Telex could notify AiResearch to have Ai-

---

1. (a) The Seller is a member of The Signal Companies group of divisions and subsidiaries and it is anticipated, although no agreement is herein made to such effect, that The Signal Companies will commit to leases or purchases of Buyer's equipment (computer peripheral equipment manufactured or marketed by a division or subsidiary of Buyer) having a value (i. e. the aggregate of the purchase price and the total rentals on leases of a maximum of five years in accordance with the Buyer's standard lease agreement at Buyer's published lease or purchase prices, exclusive of maintenance service, of computer peripheral equipment) of not less than $1,161,449.00.

Research offer the aircraft for sale to other prospective purchasers precedent to other aircraft at a price not less than the contract price.[2] Paragraph (d) provided for remission of all deposits previously made by Telex upon sale of the aircraft, and directed that any balance from the sale was to be retained by AiResearch.[3] Additionally, the Supplemental Agreement gave AiResearch the right to terminate any leases with Telex if Telex exercised its election to have AiResearch sell the aircraft.

Performance proceeded satisfactorily with Telex paying the two initial installments totaling $207,500. The third installment was due upon delivery of the airframe from Hawker-Siddeley. On June 12, 1970, AiResearch sent Telex a statement for the third installment of $787,818 and informed Telex the aircraft was due to arrive on June 23, 1970. Telex, on June 23, returned the invoice to AiResearch, notified AiResearch that due to AiResearch's failure to lease or purchase the requisite amount of Telex products, it was exercising its right to have AiResearch sell the aircraft to another purchaser, and demanded return of the two previously paid installments upon resale of the aircraft. AiResearch promptly replied that it would seek another purchaser and again demanded payment of the third installment. Telex refused to pay, and on July 22, 1970, AiResearch advised Telex the failure to pay the third installment would be viewed as an unequivocal breach of contract for which it would hold Telex responsible for all damages. In mitigation of damages, AiResearch ceased work under Telex's ordered customized completion and disposed of the materials acquired for that purpose.

Both parties engaged in various attempts to locate another purchaser for the aircraft, but due to a general downturn in the executive jet aircraft market, the aircraft did not have the high saleability quality it enjoyed at the time the contracts were executed. Another buyer was ultimately found, and the airframe was sold by AiResearch for $619,700. This was $209,487 less than Telex had agreed to pay. Telex, after the airframe had been resold, demanded refund of the total amount it had previously paid in installment payments. AiResearch refused the demand, and Telex brought suit. AiResearch counterclaimed, contending it was entitled to damages for the loss from the resale, together with the expenses of sale.

The trial court determined that the Supplemental Agreement granted Telex "an option to terminate and rescind the contract of purchase" if AiResearch failed to lease or purchase the requisite amount of Telex equipment. AiResearch contends a strict construction of the language of the contract, together with the parol evidence and conduct of the parties, discloses that finding to be erroneous. In reviewing the trial court's findings of fact, we will not disturb the findings of fact, absent a showing that they are clearly erroneous.[4]

2. (b) If, however, The Signal Companies have not so committed to purchases or leases of such equipment of a value of not less than $1,161,449.00 on or before May 30, 1970, then in such event Buyer shall have the right to notify the Seller in writing that Buyer desires to have Seller sell the Aircraft in accordance with the terms of the next succeeding paragraph.

(c) In case of the decision by Buyer to have Seller sell the Aircraft then the Seller shall be obligated to offer the Aircraft for sale to all other prospective purchasers of DH–125 aircraft before offering any other DH–125 aircraft owned by Seller in its inventory or on order by Seller from the manufacturer at a price not less than the price set forth in the Contract.

3. (d) Upon the sale of the aircraft Seller shall remit to Buyer all deposits theretofore made by Buyer with Seller pursuant to the terms of the Contract, and the balance shall be retained by Seller.

4. Upper Pecos Association v. Stans, 452 F.2d 1233 (10th Cir. 1971), petition for cert. filed 40 U.S.L.W. 3434 (U.S. Mar. 6, 1972) (No. 71–1133); Northern Natural Gas Co. v. Grounds, 441 F.2d 704 (10th Cir. 1971), cert. denied 404 U.S. 951, 92 S.Ct. 268, 30 L.Ed.2d 267.

Oklahoma law allows for rescission of the contract by one of the parties to the contract.[5] The Oklahoma Supreme Court in F. & M. Drilling Co. v. M & T Oil Co., 192 Okl. 372, 137 P.2d 575 (1943), clearly stated, at 577, the difference between cancellation of a contract and rescission: " 'Termination' or 'cancellation' of a conditional contract means to abrogate so much of it as remains unperformed, doing away with an existing agreement upon the terms and with the consequences mentioned in the writing, and different from 'rescission,' which means to restore the parties to their former position." Again, and more recently, in King v. Oakley, 434 P. 2d 868 (Okl.1967), the Oklahoma Supreme Court reaffirmed its position that " 'rescission' requires restoration of status quo and means to restore the parties to their former position." In 15 Okl.St. Ann., § 235, there is imposed the duty of restoration of everything of value upon the rescinding party and, by implication, this same duty is imposed on the other contractual party. The intent of the parties is to be gleaned from a reading of the entire contract.[6] The Supplemental Agreement afforded Telex the election, upon the failure of The Signal Companies group to commit itself to the requisite amount of computer peripheral equipment manufactured or marketed by Telex, to request AiResearch to remarket the airplane and upon resale to return Telex to the position it had prior to the execution of the contract. Under the facts found, the trial court correctly applied the law applicable.

Other points raised by appellant are premised on the assertion that Telex's refusal to pay the third installment constituted a material breach by Telex.

AiResearch contends payment of this installment was a condition precedent to its performance. Telex's breach, therefore, prevented AiResearch from performing the contract to completion. They assert that because the breach was Telex's, any rights to a refund of previous deposits which it had made under the contract and Supplemental Agreement were extinguished, and AiResearch was entitled to damages for the breach. Our previous conclusion relative to the trial court's determining an option to rescind in favor of Telex is dispositive of this contention.

The trial court found Telex to be possessed with a right of rescission exercisable upon certain conditions precedent. Those conditions precedent were met, and Telex properly exercised its option to rescind. Upon the proper exercise by Telex of its option to rescind, no contract remained upon which AiResearch could predicate an asserted breach of contract.[7]

The appellant correctly identifies the problem in this case as the failure of the contract to provide for a loss situation created by the unforeseen downturn in the executive jet market. In the absence of such a provision, and regardless of arguments by AiResearch, Telex, by paragraph (c) of the Supplemental Agreement, was fully protected from any loss in the sale of the airplane after rescission because AiResearch agreed to sell the same at a price not less than the original sale price between the parties. AiResearch did not comply with that part of the agreement when it sold the plane for a lesser price. Under the existing economic conditions it probably sold the airplane for the best price ob-

5. Larkin et al v. Tallant, 201 Okl. 436, 206 P.2d 982 (1949).

6. Tenneco Oil Co. v. Gaffney, 369 F.2d 306 (10th Cir. 1966); Dipo v. Ringsby Truck Lines, 282 F.2d 126 (10th Cir. 1960).

7. In Hooper v. Commercial Lumber Co., 341 P.2d 596 at 598 (Okl.1959), the Oklahoma Supreme Court stated: "On rescission of a contract it is avoided ab initio, and the rights of the parties in reference to the subject-matter of it are the same as if no contract had ever been made. Rescission places the parties in the position they would have occupied if the contract had never existed." See also Berland's Inc. of Tulsa v. Northside Village Shopping Center, Inc., 447 P.2d 768 (Okl.1968).

tainable, but the sale did not comply with the agreement. Under the plain wording of the whole contract entered into by the parties, regardless of the sale price, Telex upon rescission was entitled to recover the installment payments theretofore made.

Appellant strongly urges ambiguity in the agreement between the parties, thus permitting the introduction of oral evidence to resolve the ambiguity. We have carefully read and considered all of the provisions of both contracts and, like the trial court, we must conclude there is no ambiguity.

Other arguments urged by appellant for reversal are likewise without merit.

Affirmed.