**Lonney H. WHITE, Jr.; Connie J. White, Plaintiffs–Appellants,**

v.

**ATLANTIC RICHFIELD COMPANY, Defendant–Appellee.**

**No. 90–35701.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 9, 1991.

Decided Oct. 1, 1991.

Robert J. Waller, Veeder & Broeder, Billings, Mont., for plaintiffs-appellants.

Kyle A. Gray, Holland & Hart, Billings, Mont., for defendant-appellee.

Before D.W. NELSON, NOONAN and T.G. NELSON, Circuit Judges.

T.G. NELSON, Circuit Judge:

Lonney and Connie White seek damages arising from Atlantic Richfield's (ARCO) failure to reassign a gas and oil lease. The dispute involves the calculation of the market value of the lease and whether the Whites must prove that a specific market for the lease existed at the time of the breach.

## FACTS AND PROCEEDINGS BELOW

The Whites negotiated a five-year oil exploration lease with a Mr. Jarecki, the owner of a parcel of land in northwest Montana. The lease contained a delay rental clause requiring payment of $6,320 each December to keep the lease alive if no drilling had commenced. If this payment was not made, the lease would automatically expire. In 1983, the Whites assigned the lease to ARCO for $94,800. Pursuant to the agreement, ARCO was to give the Whites forty-five days notice if it did not intend to pay the delay rental charge. The Whites could either pay the delay rental or find another buyer for the lease. In 1985, ARCO did not pay the delay rental payment and failed to notify the Whites of this omission. With no notice, the Whites lost their opportunity to assign the lease to another operator or pay the delay rental and retain the lease for themselves.

Between December, 1985, and July, 1986, the price of oil fell from $25.00 a barrel to $10.00. It was not until October, 1986, however, that the Whites discovered the Jarecki lease had expired. ARCO offered to reacquire the lease from Jarecki and assign it to the Whites but they preferred money damages over a new lease.

ARCO moved for summary judgment in the district court contending that there was no genuine issue as to any material fact and that they were entitled to judgment as a matter of law. The district court found that the Whites had not been able to demonstrate that any market existed for the lease in November, 1985, the date they should have had the right to reassign or retain the lease. Therefore, the court concluded they could not show any actual damages for the breach of the contract. We reverse.

## STANDARD OF REVIEW

■ A grant of summary judgment is reviewed *de novo.* *Kruso v. Int'l Tel. & Tel. Corp.,* 872 F.2d 1416, 1421 (9th Cir. 1989). The appellate court must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. *Tzung v. State Farm Fire & Casualty Co.,* 873 F.2d 1338, 1339–40 (9th Cir.1989).

## DISCUSSION

ARCO contends that the Whites must prove two things: (1) that there was an existing market at the relevant time and (2) the fair value of the lease in that market. Since the Whites did not prove that there were buyers of the lease ready to purchase in November, 1985, ARCO argues the lease was worthless. Although ARCO cites no authority for this two-step analysis, it successfully persuaded the district court to use this approach.

■ In *Tenneco Oil Co. v. Gaffney,* 369 F.2d 306, 309 (10th Cir.1966), the Tenth Circuit held that the proper measure of damages for the breach of a reassignment obligation was the fair market value on the date of the breach. We agree with the Tenth Circuit.

■ Both parties agree that damages are properly measured by the market value of the lease at the time of the breach. *Mike Golden, Inc. v. Tenneco Oil Co.,* 450 N.W.2d 716 (N.D.1990). The problem in this case is reliably calculating the fair market value on that date. In *Gaffney,* the court held that any estimation of the price for which the party would have sold the lease had there been no breach of the contract, was based on pure speculation and was not the measure of damages. Instead, the proper measure of damages was the fair market value on the date of breach. *Id.* at 309. While the district court approved of the *Gaffney* analysis, it found that the plaintiffs provided no evidence "by way of affidavit or otherwise" which showed there was a market for the lease by comparison to other properties in the same vicinity at the time involved.

We disagree. Lonney White did in fact provide evidence of the market value. Besides his own affidavit, he submitted the affidavit of Steven Reger, a landman who had been employed by Mobil Oil in northwest Montana and who also believed the lease had considerable value in November, 1985. Furthermore, White submitted an exhibit cataloging several valuable leases he contends are of comparable nature and located sufficiently close to the Jarecki lease to be relevant on the question of its value.

■ White correctly analogizes the reassignment fair market value question to condemnation cases. The general rules for proving market value in condemnation cases are applicable in proving fair market value in an action for breach of a reassignment obligation. *Golden* at 719. One commentator noted:

As in a condemnation action, all relevant evidence of market value should be considered by the court, including sales of similar oil and gas leases, which sales occurred reasonably close to the breach in time and to the lands covered by the lease.... Generally, an individual is al-

lowed to testify as to the value of his own property. Consequently, the opinion of an individual assignor as to the market value of the lease may be admissible without qualifying him as an expert. However, to be admissible, the assignor's testimony must be based on proper consideration of sales prices of similar oil and gas leases in the area rather than merely relying on offers to purchase such leases.

J. Colosky, *The Reassignment Provision— The Agony in the Oversight,* 30 Rocky Mountain Mineral Law Institute, 5–31 (1984) (footnotes omitted).

White's own opinion of the lease's value is clearly relevant. An owner may testify as to the reasonable value of the land. *State, by and through State Highway Com'n v. Donnes,* 187 Mont. 338, 340, 609 P.2d 1213, 1214 (1980); *Ruud v. United States,* 256 F.2d 460, 463 (9th Cir.), *cert. denied,* 358 U.S. 817, 79 S.Ct. 28, 3 L.Ed.2d 59 (1958). "The weight of such testimony is, of course, affected by the owner's knowledge of circumstances which affect value, and as an interested party, it is for the jury to evaluate the credibility of his testimony." *J & H Auto Trim Co., Inc. v. Bellefonte Ins. Co.,* 677 F.2d 1365, 1369 (11th Cir.1982) (quoting *Berkshire Mutual Insurance Co. v. Moffett,* 378 F.2d 1007, 1011 (5th Cir.1967)).

Although Reger's affidavit may have been easy to dismiss, White's own testimony about the lease's value must be given greater weight for purposes of summary judgment. His supplemental evidence of similar leases bolstered his affidavit even further.

ARCO criticized the condemnation analysis and suggested instead that the proper way to view the case is through pure contract law, specifically through the case of *Rogers v. Relyea,* 184 Mont. 1, 601 P.2d 37 (1979). In *Rogers,* the Montana Supreme Court refused to award money damages because the damages were too speculative

and were not "clearly ascertainable as to their nature and origin." *Id.* at 11, 601 P.2d at 42 (citing Montana Code Ann. § 27–1–311). ARCO argues that as in *Rogers,* damages cannot be ascertained.

*Rogers* is distinguishable because the breach in that case was the failure to establish an escrow account. As a result of that failure, the plaintiff contended that a specific potential investor declined to develop the mining claim involved. The plaintiff could not reliably establish that the escrow account failure alone scared off the investor. "Another investor could have possibly expressed interest, or it might have been that [the investor] would have decided for some other reason not to invest in the mine regardless of the establishment of escrow." *Id.,* 601 P.2d at 42–43.

Here, the breach involves a failure to reassign a lease. Unlike the plaintiffs in *Rogers,* we think that White may be able to prove the fair market value. In *Golden,* the North Dakota Supreme Court similarly concluded that the plaintiffs could prove their damages, using evidence similar to that offered by White. That court held that:

> Market value is "the price a buyer is willing to accept under circumstances that do not amount to coercion." ... "Obviously, testimony of the sale of similar land in the immediate vicinity, recent in time, is going to be very persuasive as to the market value of the land being taken." In this case, evidence of sales of leases in the immediate vicinity at the closest times largely evidenced market value.

*Id.* at 719–720 (citations omitted).[1]

Lastly, the district court based its decision partly on the Whites' refusal to take back the lease. A nondefaulting party must act reasonably under the circumstances so as "not to unnecessarily enlarge damages caused by default." *IFG Leasing Co. v. Schultz,* 217 Mont. 434, 437, 705 P.2d 576, 577 (1985). We think White's refusal

---

**1.** This approach is consistent with *Gaffney.* In that case, the court instructed the district court: "On remand, the court should consider all relevant evidence of market value, including other sales of the same or similar property, which were transacted reasonably close in time and distance and under comparable market conditions." *Id.* at 310.

to take back the lease was, under the circumstances, reasonable. White only learned of ARCO's breach in October, 1986, well after the price of oil had fallen. By that time, the lease was worth considerably less than in November of 1985, when ARCO failed to notify White of its decision not to make the delay rental payment. The Whites should not be expected to absorb the loss caused by ARCO's breach.

The district court may have been correct that the lease was worthless in October, 1986. However, the significant point in time was November, 1985, the date on which the breach occurred. White has demonstrated through conventional means that the lease may have had considerable worth at that time.

## CONCLUSION

White has demonstrated that there is a genuine issue of material fact. Whether or not a jury finds White's calculations and assertions convincing, there is a valid factual dispute regarding the value of the lease. REVERSED and REMANDED.